HILARY POTASHNER (Bar No. 167060)
Acting Federal Public Defender
Seema Ahmad (Bar No. 270992)
(E-Mail: Seema_Ahmad@fd.org)
Ashfaq G. Chowdhury (Bar No. 243763)
(E-Mail: Ron_Chowdhury@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
TEOFIL BRANK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TEOFIL BRANK,<br><br>　　　　　Defendant. | Case No. CR 15-00131-JFW<br><br>**NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BRANK AND COUNSEL** |

TO:　　ACTING UNITED STATES ATTORNEY STEPHANIE YONEKURA, AND ASSISTANT UNITED STATES ATTORNEY KIMBERLY JAIMEZ:

　　　　PLEASE TAKE NOTICE that on May 4, 2015, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable John F. Walter, United States District Judge, defendant Teofil Brank will move as follows:

### MOTION

　　　　Defendant Teofil Brank, by and through his counsel of record, Seema Ahmad and Ashfaq G. Chowdhury, Deputy Federal Public Defenders, hereby moves this Honorable Court for an order suppressing evidence of obtained from the warrantless

search of the closed container belonging to Mr. Brank in the car of Etienne Yim on March 4, 2015. Mr. Yim purported to consent to the search of his car, but (1) his consent was not voluntary, and (2) he did not have actual or apparent authority to authorize a search of Mr. Brank's closed container.  As such, the warrantless search of the closed container was without probable cause and in violation of the Fourth Amendment to the United States Constitution.  Mr. Brank also moves to suppress any and all evidence obtained as a result of the illegal search of the closed container.

This motion is based on the attached Memorandum of Points and Authorities, declarations, exhibit, all files and records in this case, and any further evidence presented prior to, or at the hearing on this motion.  Mr. Brank requests an evidentiary hearing on this motion.

Respectfully submitted,

HILARY POTASHNER
Acting Federal Public Defender

DATED:  April 16, 2015          By   /s/ Ashfaq G. Chowdhury

SEEMA AHMAD
ASHFAQ G. CHOWDHURY
Deputy Federal Public Defenders

# I.  INTRODUCTION

FBI Agents searched a backpack belonging to Mr. Brank that was located in a car owned by a third party, Etienne Yim, based on purported voluntary consent to search the car given by Mr. Yim.  Agents went even further, and unzipped a brown leather case that was in the backpack.  Because Ninth Circuit law is clear that, in this situation, a third party who has an ownership interest in a vehicle does not have actual or apparent authority to authorize a search of closed containers belonging to others located in the vehicle, *see United States v. Welch,* 4 F.3d 761, 764 (9th Cir. 1993) (third party who consented to search of car did not have actual or apparent authority to consent to search of purse, located in car)[1], the search of Mr. Brank's backpack was illegal, and all the fruits of that search must be suppressed.

# II. BACKGROUND

On March 4, 2015, FBI agents arrested defendant Brank in the parking lot of a mini-mall containing a Starbucks and a Jersey Mike's.  Bates 125-29, attached as Exhibit A to Declaration of Seema Ahmad.  Mr. Brank was arrested purportedly based on probable cause that he had committed "extortion."  *Id.* at 125.

Following Mr. Brank's arrest, the agents detained an individual named Etienne Yim:

> Immediately following Brank's arrest, Special Agent (SA) Jonathan H. Bauman noticed an unknown male seated in the driver's seat of a dark colored Ford Focus parked in a row of spaces within close proximity of where Brank's arrest occurred. SA Bauman approached the unknown male in the vehicle and asked his purpose for being in the area. The unknown male initially stated something to the effect [sic], I am just waiting in the area.

---

[1] Partially reversed on other grounds in *United States v. Kim*, 105 F.3d 1579 (9th Cir. 1997).  *See also United States v. Arreguin*, 735 F.3d 1168, 1178 (9th Cir. 2013) (applying *Welch* in reversing denial of motion to suppress); *United States v. Davis*, 332 F.3d 1163, 1168-69 (9th Cir. 2003) (same).

1

1    Upon further questioning, the unknown male added something to the effect
2    of, I am here to pick up my friend. In order to clarify the unknown male's
3    purpose for remaining in the area during Brank's arrest, and for officer
4    safety reasons, SA Bauman requested the unknown male exit his vehicle for
5    additional questioning. The unknown male agreed to do so. After existing [sic]
6    his vehicle, SA Bauman asked the unknown male for the location of the
7    friend for whom he was waiting. The unknown male pointed toward the
8    entrance of the Starbucks coffee shop. SA Bauman then asked the unknown
9    male for the name of his friend. The unknown male stated "Teo." SA Bauman
10   immediately detained the unknown male under suspicion he was associated
11   with Teofil Brank. The unknown male subsequently confirmed he was waiting
12   for Brank and identified himself as Etienne. His identity was confirmed
13   when Agents located a California Driver License on his person containing
14   his photograph, the name of Etienne Kaala Yim.

15   Ahmad Decl., Ex. A, at 126.

16       The agents then purportedly proceeded to obtain Mr. Yim's consent to search the
17   car:

18       Following Yim's detention, Agents conducted a protective sweep of the
19       passenger compartment of Yim's Ford Focus. After the protective sweep was
20       completed, Supervisory Special Agent (SSA) Joseph P. Brine asked Yim for
21       permission to search his vehicle. Yim consented to the search and also
22       advised he would assist Agents in locating items in the vehicle belonging
23       to Brank. SSA Brine escorted Yim to the vehicle. Yim identified a black
24       High Sierra brand backpack and a Samsung brand cellular telephone, both
25       laying [sic] in plain sight in the center console of the front passenger
26       compartment of the vehicle, as belonging to Brank. SSA Brine observed a
27       brown leather case sticking out of the top of the black High Sierra brand
28       backpack. The case looked to SSA Brine to be a case commonly used to store

2

1  firearms. SSA Brine undid the zipper of the brown leather case and
2  observed a firearm. Subsequently, the Black High Sierra brand backpack,
3  all of its contents, and the Samsung brand cellular telephone were seized
4  as evidence.

5  Ahmad Decl., Ex. A, at 126-27.

6  Mr. Brank claims ownership of the black backpack. *See* Declaration of Teofil
7  Brank.[2]

8

9  ### III.  DISCUSSION

10  The search of Mr. Brank's backpack and the search of the brown leather case
11  was illegal for the following reasons:

12  A. Mr. Yim's consent was not knowing and voluntary;
13  B. Mr. Yim did not have actual authority to consent to the search of Mr.
14  Brank's backpack, and
15  C. Mr. Yim did not have apparent authority to consent to the search of Mr.
16  Brank's backpack.

17  Accordingly, the evidence obtained as a result of the search of the backpack must be
18  suppressed. *See Welch*, 4 F.3d at 764.

19  **A.    Mr. Yim's Consent Was Not Knowing and Voluntary**

20  The burden is on the government to prove that Mr. Yim's consent to the search
21  of the car was knowing and voluntary. *Welch*, 4 F.3d at 763 (citing *Schneckoth v.*
22  *Bustamonte*, 412 U.S. 218, 227 (1973)).  The factors to be weighed are (1) whether the
23  person was in custody; (2) whether the officers had their guns drawn; (3) whether

24

25

26  [2] The Declaration of Teofil Brank is provided pursuant to *Simmons v. United*
27  *States*, 390 U.S. 377, 390-94 (1968), and Mr. Brank does not waive his Fifth
   Amendment privilege. All facts other than those set forth in Mr. Brank's declaration are
   based on facts alleged in the FBI report provided to the defense.  The defense does not
28  concede the accuracy of the facts alleged in the report.

*Miranda* warnings had been given; (4) whether the person was told that he had a right not to consent; (5) whether he was told a search warrant could be obtained. *Id.* (citing *United States v. Carbajal*, 956 F.2d 924, 930 n. 3 (9th Cir. 1992)).

Here the FBI's own report appears to establish that

1. Mr. Yim was in custody as he was "immediately detained" by armed FBI agents after he mentioned that he was waiting for his friend "Teo";
2. That no *Miranda* warnings were given;
3. That Mr. Yim was not told he had a right not to consent.

Ahmad Decl., Ex. A.

It is also likely that guns were drawn, given that the FBI report states that Mr. Yim was "immediately detained." It thus appears that, on balance, the government will be unable to carry its burden to establish that Mr. Yim's consent to the search of the car was knowing and voluntary. *See Welch*, 4 F. 3d at 763.

## B.    Mr. Yim Lacked Authority to Consent to the Search of Mr. Brank's Backpack

The government has the burden of establishing the effectiveness of a third party's consent. *Welch*, 4 F.3d 764 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990)). The government can do so in three ways:

First, the government can come forward with persuasive evidence of both shared use and joint access to or control over a searched area, which would demonstrate actual authority to consent. . . . Second, it can show that the owner of the property to be searched has expressly authorized a third party to give consent to the search. Finally, it may establish consent by means of the "apparent authority doctrine."

*Welch*, 4 F. 3d at 764 (citations omitted). Each of these will be discussed in turn.

4

1.   **Mr. Yim Had No Actual Authority to Consent to a Search of Mr. Brank's Backpack under a Theory of Joint Access and Mutual Use**

Mr. Yim plainly could give lawful consent to a search of his car.  However, Mr. Brank's backpack, and the contents therein, "is another matter entirely."  Welch, 4 F.3d at 764.  That Mr. Brank "had a limited expectation of privacy in the car by virtue of [his] sharing arrangement with [Mr. Yim] does not mean that [he] had similarly limited privacy expectations in items within the car which are independently the subject of such expectations."  *Id.*  "The shared control of 'host' property does not serve to forfeit the expectation of privacy in containers within that property."  *Id.* (citing *United States v. Karo*, 468 U.S. 705, 725-27 (1984) (O'Connor, J., concurring)).

Here, "there is no question that [Mr. Brank] had a reasonable expectation of privacy in the contents of [his backpack]."  *Welch*, 4 F.3d at 764.  Indeed, "a [backpack] is a type of container in which a person possesses the highest expectation of privacy."  *Id.* (citing *United States v. Salinas-Cano*, 959 F.2d 861, 864 (10th Cir. 1992)).  "Therefore, the government must show shared control with respect to the [backpack] as well as with respect to the vehicle if it is to prevail on a mutual use and joint control theory."  *Id.*  In this case, it cannot do so: "there is simply nothing in the record demonstrating that [Mr. Yim] had use of, let alone joint access to or shared control over, [Mr. Brank's backpack]."  *Id.* (citing *Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980) (suspect has no reasonable expectation of privacy in companion's purse)).  As a result, Mr. Yim plainly did not have actual authority under a theory of joint access and mutual use of the backpack.

2.   **Mr. Yim Had No Actual Authority based on Express Authorization to Consent to a Search of the Backpack**

Here, as in *Welch*, "[l]ittle need be said with regard to the second means by which effective third party consent could be established – express authorization."  *Welch*, 4 F.3d 764.  That is because "[t]here is simply nothing in the record [that]

indicates that [Mr. Brank] expressly authorized [Mr. Yim] to give consent to a search of [his backpack]." *Id.*

### 3.   Mr. Yim Did Not Have Apparent Authority to Consent to a Search of the Backpack

"Under the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *Welch*, 4 F.3d at 764.  "However, the doctrine is applicable only if the facts believed by the officer to be true would justify the search as a matter of law." *Id.*  "A mistaken belief as to the law, no matter how reasonable, is not sufficient." *Id.*

When the agents decided to search Mr.Brank's backpack, they knew that 1) Brank was Yim's friend, 2) Brank had traveled with Mr. Yim to the parking lot, 3) the backpack belonged to Brank. *See* Ahmad Decl., Ex. A.  "There is nothing about these facts that would have led a reasonable officer to believe that [Mr. Brank] had expressly given [Mr. Yim] authority to consent to the search of the [backpack]." *Welch*, 4 F.3d at 765.  "Nor would any of these facts have caused a reasonable officer to believe that [Mr. Yim] shared use of and had joint access to or control over [Mr. Brank's backpack] and that the search was justified for that reason.  Moreover, any such belief would have necessarily rested on the erroneous assumption that the mere presence of the [backpack] in the [car] gave [Mr. Yim] control over it or access to its contents, or, to put it differently, that [Mr. Brank's] leaving the [backpack] in the car gave [Mr. Yim] the right to open it without [him]." *Id.* "Such an assumption would have been erroneous and would have reflected a mistaken belief as to the law. . . . Therefore, the facts available to the officers at the time of the search do not support application of the apparent authority doctrine." *Id.*

Just as in *Welch*, there is nothing "about the circumstances of [Mr. Yim's] exchange with the [agents] that would have caused them reasonably to believe that he had actual or express authority to consent to a search of [Mr. Brank's] [backpack]." 4

F.3d at 765.  As in *Welch*, Mr. Yim and Mr. Brank were separately detained and unable to communicate at the time Mr. Yim purportedly consented to the search, and "[t]here is no evidence that [Mr. Brank] was aware of [Mr. Yim's] actions or had any knowledge that the [agents] desired to conduct a search of any kind."  *Id.*  Therefore, "the [agents] were required, at a minimum, to inquire further before assuming [Mr. Yim's] consent was sufficient to authorize them to open the [backpack] they discovered during their search of the automobile."  *Id.*

"In sum, even if it is assumed that the [agents] subjectively believed that [Mr. Yim] had the authority to consent to a search of [Mr. Brank's backpack], . . . the search of the [backpack] cannot be upheld on the basis of the apparent authority doctrine."  *Welch*, 4 F.3d at 764.  "Reasonable belief" will not save the search because the agents' errors were errors of law and not of fact.  *Id.*  And because the government will be unable to carry its burden of demonstrating that the purported consent to search Mr. Brank's backpack was valid, the search must be deemed unlawful and the results of that search suppressed.  *Id.*

As a separate matter, agents lacked probable cause to search the brown leather case.  The FBI report makes clear that agents "undid the zipper of the brown leather case."  There was no legal basis for this intrusion into the brown case.  Therefore, the search was illegal and its fruits must be suppressed.

//

//

//

//

//

//

//

//

//

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV. CONCLUSION

For the foregoing reasons, the motion should be granted and the search and seizure of the backpack and its contents – and all evidence obtained as a result of that search -- should be suppressed.

Respectfully submitted,

HILARY POTASHNER
Acting Federal Public Defender

DATED:  April 16, 2015          By  */s/ Ashfaq G. Chowdhury*
_____
SEEMA AHMAD
ASHFAQ G. CHOWDHURY
Deputy Federal Public Defenders
Attorneys for Defendant, TEOFIL BRANK

8