STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
KIMBERLY D. JAIMEZ (Cal. Bar No. 271235)
Assistant United States Attorney
General Crimes Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3779
     Facsimile: (213) 894-0142
     E-mail:    kimberly.jaimez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 15-00131-JFW |
|---|---|
| Plaintiff, | OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE |
| v. | |
| TEOFIL BRANK, aka "Jarec Wentworth," | Hearing Date: May 4, 2015<br>Hearing Time: 10:00 a.m.<br>Location:    Courtroom of the<br>             Hon. John F. Walter |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Kimberly D. Jaimez, hereby files its opposition ("Opposition") to Defendant's Motion to Suppress Evidence (Dkt. No. 48) ("Motion" or "Def. Mot.") filed on April 16, 2015 by defendant concurrently with the Declaration of TEOFIL BRANK and the Declaration of Seema Ahmad ("Ahmad Decl.").

//

//

This Opposition is based upon the attached memorandum of points and authorities, the Declaration of Special Agent Joseph Brine, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 27, 2015          Respectfully submitted,

                                              STEPHANIE YONEKURA
                                              Acting United States Attorney

                                              ROBERT E. DUGDALE
                                              Assistant United States Attorney
                                              Chief, Criminal Division

                                                    /s/
                                              KIMBERLY D. JAIMEZ
                                              Assistant United States Attorney

                                              Attorneys for Plaintiff
                                              UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                             PAGE

I.   INTRODUCTION..................................................1

II.  STATEMENT OF FACTS............................................2

     A.   Alerts Regarding Other Potential Participants............3

     B.   Undercover Meeting.......................................3

     C.   Search of Ford Focus & Black Backpack....................4

III. ARGUMENT......................................................5

     A.   Defendant Lacks Standing to Challenge the Search of
          the Car Based on Yim's Consent...........................5

     B.   There was Probable Case to Search the Ford Focus and
          Containers Therein.......................................5

          1.   Agents Had Probable Cause to Search the Ford
               Focus...............................................6

          2.   Agents Had Probable Cause to Search the Backpack
               Alone...............................................8

     C.   The Search Was a Valid Search-Incident-to-Arrest.........9

     D.   The Search Was a Valid Terry Protective Sweep...........11

IV.  CONCLUSION...................................................12

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

CASES

Arizona v. Gant,
    556 U.S. 332 (2009)..........................................9

California v. Acevedo,
    500 U.S. 565 (1991)..........................................8

California v. Carney,
    471 U.S. 386 (1985)..........................................6

Illinois v. Gates,
    462 U.S. 213 (1983).......................................5, 6

Michigan v. Long,
    463 U.S. 1032 (1983)....................................11, 12

New York v. Belton,
    453 U.S. 454 (1981)..........................................9

Rawlings v. Kentucky,
    448 U.S. 98 (1980)..........................................11

Terry v. Ohio,
    392 U.S. 1 (1968)...........................................11

Thornton v. U.S.,
    541 U.S. 615 (2004).......................................9, 10

United States v. Alvarez,
    899 F.2d 833 (9th Cir.1990)..................................5

United States v. Burnette,
    698 F.2d 1038 (9th Cir. 1983)................................9

United States v. Henderson,
    241 F.3d 638 (9th Cir. 2000).................................6

United States v. Monclavo-Cruz,
    662 F.2d 1285 (9th Cir. 1981)...............................10

United States v. Ross,
    456 U.S. 798 (1982)..........................................8

United States v. Smith,
    389 F.3d 944 (9th Cir. 2004)................................11

United States v. Vasey,
    834 F.2d 782 (9th Cir. 1987)................................10

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

United States v. Wanless,
     882 F.2d 1459 (9th Cir. 1989)..................................5

United States v. Weaver,
     433 F.3d 1104 (9th Cir. 2006)..................................9

STATUTES

18 U.S.C. § 875(d)..................................................1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

TEOFIL BRANK ("defendant") is charged with one count of 18 U.S.C. § 875(d) (Sending Interstate Communications with Intent to Extort) and was initially arrested for this charge on March 4, 2015 at a Starbucks Coffee Shop in El Segundo, California. Contemporaneous with arrest, FBI agents discovered that defendant had arrived at the Starbucks in a Ford Focus with an associate, later identified as Etienne Yim ("Yim"). After Yim's arrest, Yim consented to a search of Yim's Ford Focus. <u>Before</u> conducting the search, agents called the phone used by defendant for the extortion and, immediately, heard a phone ring from inside the car. Yim identified the phone, along with the black backpack lying next to the phone on the front center console of the passenger compartment, as defendant's possessions. A brown leather firearm case was visibly protruding from the backpack. With these observations and information, agents then searched the Ford Focus, the backpack, and the brown case, which contained a revolver. Defendant has moved to suppress the backpack (and the firearm case) arguing that Yim (1) did not voluntarily consent to the search of his car and (2) did not have authority to authorize any search of defendant's backpack. (Def. Mot., 2).

As a preliminary matter, the defendant does not have standing to challenge Yim's consent with respect to the search of the Ford Focus leased in Yim's name. Therefore, defendant's challenge to the validity of Yim's consent has no merit.

More importantly, however, the generally undisputed facts demonstrate that the warrantless searches of the Ford Focus and defendant's backpack were justified as (1) probable cause searches,

(2) searches incident to arrest, and (3) protective searches pursuant to Terry v. Ohio.  These searches were never based on Yim's consent to search car alone.  Because defendant had been arrested immediately before the search (and agents had probable cause to arrest Yim), agents had reason to believe that fruits or instrumentalities of the extortion scheme would be in the backpack and the Ford Focus in which both men arrived.  As such, agents were justified in searching both the backpack (along with its contents) and the vehicle — even without Yim's consent.

## II.   STATEMENT OF FACTS

The facts relevant to defendant's Motion are relatively undisputed.  FBI agents arrested defendant for extortion on March 4, 2015, at 8:40 p.m., in the parking lot of an El Segundo Starbucks coffee shop. (Ahmad Decl., Ex. A, FD-302 of SA Jonathan Bauman, hereinafter "Bauman 302," p.1).  On or about March 3, 2015, the day before defendant's arrest and the search at issue, the Victim of the extortion scheme met with the FBI to report defendant's previous and continued extortion attempts threatening Victim's reputation via cellular telephone.  (Brine Decl., ¶ 2).  The Victim also explained to the FBI that, as a result of the extortion, the Victim had already wired the defendant $500,000 and had given defendant possession of the Victim's Audi r8.  (Id.)  During this meeting, defendant sent the Victim extorting text messages from phone number 916-420-7906, demanding additional money and a condominium, and then ultimately $1,000,000 in cash.  (Id.)  Agents reviewed those text messages and directed the Victim to respond.  (Id.)  Specifically, the Victim was directed to arrange a meeting between defendant and an undercover agent, who would pose as the Victim's associate, to deliver the

demanded $1,000,000. (Id.)  The meeting was scheduled for March 4, 2015 at the Starbucks coffee shop. (Id., ¶ 3)

### A.  Alerts Regarding Other Potential Participants

Just hours before the March 4, 2015 meeting, defendant called the Victim in a recorded phone call and indicated that defendant would not be coming to the meeting alone. (Id., ¶ 4).  Agents conducting surveillance at the Starbucks received word that defendant may be accompanied and to be on alert of additional participants at the scene. (Id.)

### B.  Undercover Meeting

At approximately 8:30 p.m. on March 4, 2015, an undercover agent (posing as an associate of the Victim) met with defendant inside the Starbucks to deliver the title to the Audi r8 and $1,000,000 in cash to defendant. (Id., ¶ 5; FD302 of SA Sean Sterle attached hereto as Exhibit 1, hereinafter "Sterle 302," p.1).  The undercover agent gave defendant the vehicle title inside the Starbucks and then led defendant outside the Starbucks ostensibly to deliver a bag holding the cash when agents arrested defendant for extortion. (Sterle 302, pp. 1-2).  At the time of arrest, agents recovered from defendant's person the certificate of title in the name of the Victim.  (Bauman 302, p.2). Defendant did not have the 916-420-7906 cellular phone, used in by defendant in the extortion, on his person at the time of arrest. (Brine Decl., ¶ 5).

Immediately following the arrest, FBI SA Bauman noticed an unknown male, later identified as Yim, seated in the driver's seat of a Ford Focus parked in close proximity to where the arrest occurred. (Bauman 302, p.2).  When SA Bauman asked Yim about his purpose for being in the area, Yim said he was "just waiting." (Id.)  Upon

3

further questioning, Yim stated something to the effect of "I am here to pick up my friend." (Id.) The agent asked Yim to get out of his car and asked about the location of the "friend." (Id.) When Yim pointed towards the Starbucks, SA Bauman asked for the name of the friend, to which the man responded "Teo." (Id.) The agent then immediately detained the man under suspicion he was associated with Teofil Brank and the extortion. (Id.) Yim subsequently confirmed he was waiting for defendant. (Id.)

### C.   Search of Ford Focus & Black Backpack

Following Yim's detention, agents conducted a brief protective sweep of the passenger compartment of Yim's Ford Focus. (Id.) Supervisory Special Agent ("SSA") Joseph P. Brine then asked Yim for permission to search the Ford. (Id.) Yim consented. (Id.) Yim also stated that he would assist agents in locating items in the vehicle belonging to defendant. (Id.) SSA Brine walked Yim to the Ford Focus and then asked SA Aguirre to call the 916-420-7906, the number of the phone defendant had used to communicate the extortion threats, because the phone had still not been located. (Brine Decl., ¶ 6). SA Aguirre had the Victim call the 916-420-7906. (Id.) SSA Brine heard the phone ring from inside Yim's Ford Focus. (Id.) Yim thereafter identified (1) the Samsung cellular telephone and (2) the black High Sierra brand backpack (both lying on the center console of the front passenger compartment) as belonging to defendant. (Id.; Bauman 302, p.2). SSA Brine also saw a brown leather case sticking out of the top of the backpack. (Bauman 302, pp. 2-3). SSA Brine noted that the case appeared to be the type of case commonly used to store firearms, undid the zipper of the case and confirmed the presence of a revolver. (Id.) Subsequently, the black backpack belonging to

4

defendant, including the case with the revolver, was seized as evidence.[1] (Id.)

After the arrest, agents later confirmed that Yim was the registered owner of the Ford Focus as evidenced by Exhibit 2 attached hereto.

## III. ARGUMENT

### A. Defendant Lacks Standing to Challenge the Search of the Car Based on Yim's Consent

As a threshold matter, while defendant has standing to challenge the search of his backpack, defendant does not have standing to challenge the validity of Yim's consent to generally search the Ford Focus leased in Yim's name. United States v. Wanless, 882 F.2d 1459, 1462 (9th Cir. 1989) ("as a general rule, only the owner of the vehicles or an individual with a legitimate privacy interest in the vehicles may challenge an allegedly illegal search."). Therefore, defendant's arguments regarding the voluntariness of Yim's consent to search the Ford Focus lack merit.

### B. There was Probable Case to Search the Ford Focus and Containers Therein

Agents searched the defendant's backpack, not on the basis of Yim's consent, but because FBI agents had probable cause to believe that the Ford Focus and defendant's backpack contained evidence of criminal activity, namely extortion. Probable cause to search exists generally if, under the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Alvarez, 899 F.2d 833, 836, 839 (9th

---

[1] Defendant does not seek to suppress the cellphone.

5

Cir.1990).  It is a fluid concept dependent on the particular factual context supported by the officers' observations.  Id. at 232.  Furthermore, it is an objective standard that analyzes whether the facts are sufficient to warrant a man of reasonable prudence to believe that evidence of a crime will be found.  United States v. Henderson, 241 F.3d 638, 648 (9th Cir. 2000), as amended (Mar. 5, 2001).

        1.    Agents Had Probable Cause to Search the Ford Focus

Pursuant to the automobile exception, law enforcement may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime. California v. Carney, 471 U.S. 386, 391-93 (1985) (search of motor home valid because police had probable cause to believe occupant was selling narcotics); Henderson, 241 F.3d at 648 (probable cause exited to search vehicle for evidence of robbery after defendant's arrest for robbery).  And "as is often the case, the questions of whether the agents had probable cause to arrest . . . and whether they could search [the arrestee's] car rest on the same evidence."  Henderson, 241 F.3d at 648.

In Henderson, for example, the Ninth Circuit determined that agents had probable cause to search the car of the "Wig Bandit" who had just been arrested for several bank robberies. Id.  The court held that it was reasonable for agents to believe that the Wig Bandit kept his costumes from the robberies and that the costumes might have been in the car because he tended to reuse such outfits.  Because the Wig Bandit was known to only be visiting the area at the time of his arrest, agents could infer that one of the costumes might have been in the luggage in the car.  Additionally, when a witness mentioned

6

there was a gun in the car, and the agents knew the Wig Bandit had used a handgun in the previous robbery, agents had another reason to believe evidence of the robberies could have been in the Wig Bandit's car.  This probable cause existed even though it had been two weeks since the last robbery.

Here, agents had even more compelling evidence of probable cause.  Like Henderson, the probable cause to search the Ford Focus in which defendant arrived at the Starbucks and the probable cause to arrest defendant for extortion rest on many of the same facts.  After sending text messages to the Victim furthering the extortion, defendant arrived at the Starbucks, met with an agent, and attempted to obtain the title to the Victim's Audi r8 as well as additional extortion proceeds.  Agents knew that defendant had already obtained $500,000 and had possession of the Victim's Audi r8 at the time of the search.  Defendant's attempted pick-up of extortion proceeds had occurred only moments before defendant's arrest and the search of the Ford Focus, in which defendant had recently been a passenger.  At the time of arrest, defendant did not have the 916-420-7906 (used to communicate extortionate messages) on his person.  However, when the Samsung phone corresponding to 916-420-7906 was called by the Victim (at agent's request), SSA Brine heard the phone ringing from inside the Ford Focus.  Yim expressly told agents that the Samsung phone next to the backpack on the center console both belonged to defendant.[2]  Just before the search, the SSA Brine also saw a case sticking out of the backpack consistent with a gun case.

---

[2] Defendant does not have standing to challenge Yim's statements.

Based on these facts a reasonable person, and specifically a law enforcement agent, could conclude that further evidence of the extortion could be found in the Ford Focus in which defendant arrived to pick up the $1,000,000. Agents could reasonably infer that they would likely uncover evidence of the extortion in the Ford Focus (i.e., the phone used to extort, the Audi car keys, relevant photographs related to the threatened extortion, key bank documents evidencing the prior $500,000 wire transfer, receipts, or other items related to the completed and ongoing extortion concerning the Victim's reputation).

Because probable cause extended to all containers in the Ford Focus, the agents also had probable cause to search the backpack in the center console for evidence of extortion. <u>United States v. Ross</u>, 456 U.S. 798, 821 n.28 (1982) (probable cause to search entire vehicle for drugs justified search of packages in the trunk of vehicle).

### 2. <u>Agents Had Probable Cause to Search the Backpack Alone</u>

Additionally, agents also had probable cause to search the backpack specifically because Yim identified it as belonging to defendant. Law enforcement may search a container in a vehicle if probable cause exists to search the container itself. <u>California v. Acevedo</u>, 500 U.S. 565 (1991). In this case, defendant's contemporaneous arrest coupled with information that the defendant arrived with Yim and Yim's identification of the backpack as defendant's, provide a fair probability that evidence of the extortion or related to the extortion (i.e., Audi car keys, bank documents, photographs, and the like) could likely have been

8

contained in the backpack itself lying next to the extortion cellular phone.

### C. The Search Was a Valid Search-Incident-to-Arrest

Further, in addition to the probable cause basis, the search of the Ford's passenger compartment and the defendant's backpack were valid searches-incident-to-arrest, another exception to the Fourth Amendment warrant requirement.  In Arizona v. Gant, 556 U.S. 332, 343-44 (2009), the Supreme Court held that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."  While the Court in Gant found the search of the vehicle to be illegal in that context because the arrest was for a suspended license (and the vehicle was unlikely to hold relevant evidence regarding that traffic offense), the Court noted that in other contexts such as this one, "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." Gant, 556 U.S. at 343-44 (citing Thornton v. U.S., 541 U.S. 615, 632 (2004) (search incident to arrest upheld where recent occupant of vehicle was arrested outside of vehicle for possessing controlled substances); see also New York v. Belton, 453 U.S. 454, 101 (1981) (abrogated on other grounds) (upholding search of vehicle incident to arrest for drug offense).  The Court noted that in such cases as Thornton and Belton, where there was a clear "evidentiary basis" to believe evidence of the crime may be found in the vehicle, the search incident to arrest exception applies. Gant, 556 U.S. at 343-44.  See also United States v. Weaver, 433 F.3d 1104, 1106 (9th Cir. 2006) (upholding a search of vehicle incident to arrest conducted 10 to 15

9

minutes after an arrest and after the arrestee had been handcuffed and secured in the back of a patrol car); United States v. Burnette, 698 F.2d 1038, 1049 (9th Cir. 1983) (police officer may, incident to a lawful arrest, conduct a contemporaneous warrantless search of the arrestee's person and of the area into which the arrestee might reach to destroy evidence and containers found within that area may also be searched contemporaneously with the arrest). Finally, the search-incident-to-arrest exception applies to the passenger compartment and its containers in a vehicle used by the arrestee, even when officer does not make contact with the vehicle until after the person arrested has already left the vehicle. Thornton, 541 U.S. 615.

Here, defendant was not arrested pursuant to a traffic violation or suspended license, rather defendant was arrested on suspicion that he extorted the Victim (and received $500,000 as well as an Audi r8 as a result). Furthermore, defendant was arrested only a few feet away from Yim's Ford Focus and Yim admitted that he was waiting there for "Teo." This information coupled with defendant's statements to the Victim that he was not coming alone confirmed to agents that defendant had arrived in Yim's Ford Focus. When Yim told the agents that the Samsung phone and the backpack belonged to the defendant, agents had a reasonable basis to believe that this backpack in the passenger compartment of the Ford Focus, contained evidence relevant to the extortion scheme, including potentially the car keys for the Audi, bank records, and other items discussed above.

Search incident to arrest of vehicles and containers typically only become problematic when they are conducted well after arrest. See United States v. Vasey, 834 F.2d 782, 787 (9th Cir. 1987) (search of suspect's car 30 to 45 minutes after suspect was arrested,

10

handcuffed and placed in back seat of police cruiser not incident to lawful arrest); United States v. Monclavo-Cruz, 662 F.2d 1285 (9th Cir. 1981) (warrant was required where container is not searched immediately but was instead taken to the police station well after arrest).  Here, however, there no issue regarding the contemporaneousness of the agent's search.  SA Bauman's report, attached to the Ahmad Declaration, indicates that agents began questioning Yim immediately after defendant's arrest and such questioning quickly resulted in Yim's detention followed by the search. (Bauman 302, pp.2-3)

Additionally, because agents knew defendant was accompanied for the extortion pick-up, agents had probable cause to arrest Yim and then search all the contents of Yim's vehicle as a valid search-incident-to-arrest of Yim.  Such a search need not occur after the arrest, but can occur so long as probable cause to arrest existed prior to the search (as it did here). Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) (reasoning that it was not "particularly important that the search preceded the arrest" because police had probable cause to arrest the defendant when he admitted to ownership of drugs); United States v. Smith, 389 F.3d 944, 952 (9th Cir. 2004) (search of the vehicle before the formal arrest valid because officer had probable cause to arrest for false impersonation).

**D.   The Search Was a Valid Terry Protective Sweep**

Finally, the search of the passenger compartment of Ford Focus (and the backpack with a gun case) was reasonable under the principles articulated in Terry v. Ohio, 392 U.S. 1, 21 (1968). In Michigan v. Long, 463 U.S. 1032 (1983), the Supreme Court held that an officer may search a vehicle's passenger compartment when he has

reasonable suspicion that an individual, whether or not the arrestee, is "dangerous" and might access the vehicle to "gain immediate control of weapons." Id., at 1049 (citing Terry, 392 U.S. at 21). If, while conducting a legitimate Terry search of an automobile's interior, the officer discovers contraband other than weapons, he cannot be required to ignore such items. Michigan, 463 at 1033.

In this case, agents detained Yim on suspicion he was connected to the extortion. Agents were, thus, authorized under Michigan and Terry to conduct a protective search of the vehicle's passenger area to ensure there were no weapons inside the Ford Focus. In fact, a revolver case (containing a Colt Python revolver) was present and could have posed a risk to officer safety. The search of the leather case, at minimum, should stand as a protective Terry search.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion to suppress the backpack and its contents.