HILARY POTASHNER (Bar No. 167060)
Acting Federal Public Defender
Seema Ahmad (Bar No. 270992)
(E-Mail: Seema_Ahmad@fd.org)
Ashfaq G. Chowdhury (Bar No. 243763)
(E-Mail: Ron_Chowdhury@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
TEOFIL BRANK

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 15-00131-JFW |
| Plaintiff, | **DEFENDANT'S MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE OF TWEET OR RE-TWEET POST ON TWITTER** |
| v. | |
| TEOFIL BRANK, | **Hearing Date: May 8, 2015** |
| Defendant. | **Hearing Time: 10:00 a.m.** |

Pursuant to the Court's Trial Order (Docket No. 19), paragraphs 7-14, Defendant Teofil Brank, by and through his attorneys of record, Deputy Federal Public Defenders Seema Ahmad and Ashfaq G. Chowdhury, and Plaintiff, the United States, by and through its attorney of record, Kimberly Jaimez, submit the following motion.

**<u>DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE
OF TWEET OR RE-TWEET PURPORTEDLY POSTED ON TWITTER</u>**
**<u>DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE
OF TWEET OR RE-TWEET PURPORTEDLY POSTED ON TWITTER</u>**

## I.INTRODUCTION AND BACKGROUND

The government's theory of the case is that Mr. Brank "transmitted in interstate commerce telephone communications and electronic text communications that contained a true threat to injure the reputation of victim D.B., that is, defendant BRANK threatened to distribute sexually explicit photographic images and sensitive information, true and embellished, about victim D.B. on defendant BRANK's social media accounts, including Twitter, if victim D.B. refused to transfer money, a motorcycle, and the title of victim D.B.'s automobile to defendant BRANK." Indictment (Docket No. 10) at 1-2.

At the center of Mr. Brank's purported threats is a purported post that he purportedly made on a Twitter account maintained under the name @JarecWentworth on or around February 16, 2015.  The government has stated that it does not have the original Tweet posted on the @JarecWentworth Twitter account.  Instead, the government has offered the oral testimony of complaining witness D.B. as to what the Tweet at issue said.  According to the FBI report, victim D.B. would testify that a third party read the Tweet to him over the phone and that the Tweet said "something . . . to the effect of 'Does anyone know a guy named D--?"[1]  *See,* MIL Ex. A, Bates 106-110, FBI Report of Interview with D.B.  Again, D.B. never saw the Tweet at issue. The government has also produced a report from the FBI: an agent performed a Google

---

[1] The Tweet, as recalled by D.B. from his phone conversation -- he never in fact saw the Tweet -- purportedly had his first name.

1

search and located what the agents calls a "re-post" on the Twitter account of @STR8UPGAYPORN! *See* MIL Ex. C, Bates 259-260.

The Court should exclude evidence of the Tweet purportedly posted on @JarecWentworth Twitter account for the following reasons:

1. There is insufficient evidence that the @JarecWentworth account was run by Mr. Brank; it is not a verified Twitter account;

2. Even if the government could show that Mr. Brank ran the @JarecWentworth account, the government may not bring in unreliable oral testimony regarding the purported tweet; the testimony and evidence is as to the specific terms of a writing; the Best Evidence Rule prohibits such oral testimony regarding a writing that is not in the possession of any party;

3. Even assuming the Best Evidence Rule did not bar the oral testimony regarding the Tweet, the proffered testimony of the recall of D.B. regarding a Tweet read to him over the phone by a third party is entirely too unreliable to be admissible.

The Court should exclude any evidence of a purported "re-post" and or re-tweet posted by an unknown third party on the @STR8UPGAYPORN! Twitter feed for the following reasons:

1. The "re-post" or "re-tweet" was a post entirely composed by the unknown third party who runs the @STR8UPGAYPORN! Twitter account; the post was not an automated Twitter retweet, which is a function on Twitter that allows a user to retweet, in whole, and without the ability to make any alteration, another user's post; that was not done here;

2. Even assuming that the user operating under the handle @STR8UPGAYPORN! attempted to compose a modified re-post of the purported @JarecWentworth Tweet, we have no idea what changes the user operating under the @STR8UPGAYPORN! handle made to the original

2

Tweet, which implicates the concerns set out above, including the Best Evidence Rule.

Moreover, both the oral testimony of D.B. as to the Tweet and the purported "re-post" by @STR8UPGAYPORN are unreliable an inadmissible hearsay being offered for the truth of the matter: the truth of the matter being (1) that the statements were made by Teofil Brank, and (2) that the Tweet named D.B.

## II.  DISCUSSION

### A.    It Is the Government's Burden to Establish Admissibility

It is the government's burden to establish the admissibility of its proposed evidence.  *See, e.g., United States v. Washington*, 106 F.3d 983, 1001-02 (D.C.Cir. 1997); *Jacobson v. Deutsche Bank, A.G.,* 206 F. Supp. 2d 590, 595 n. 17 (S.D.N.Y. 2002).

### B.    The Proposed Evidence Regarding D.B.'s Recollection of the Tweet Being Read to Him Over the Phone Is Inadmissible

#### 1.    There Is Insufficient Evidence that the @JarecWentworth Account Was Run or Controlled by Mr. Brank

Twitter has verified accounts.  For example, the Twitter accounts of Hilary Clinton (@HilaryClinton) and Marco Rubio (@MarcoRubio) are verified accounts, officially verified by Twitter.  Such Twitter accounts have a "blue verified badge" on the Twitter profiles, demonstrating that the accounts have been verified to belong to the named user by Twitter.  *See* "FAQs about verified accounts" on Twitter, available at << https://support.twitter.com/groups/31-twitter-basics/topics/111-features/articles/119135-about-verified-accounts# >>, last visited on April 29, 2015 at 3:13 p.m ("Verification [on Twitter] is currently used to establish authenticity of key individuals and brands on Twitter.").

Anyone can open a Twitter account under any name.  There are, for example, unverified Twitter accounts for Mark Twain (@MarkTwain), Karl Marx (@KarlMarx), and Genghis Khan (@GenghisKhan).  Anyone could just as easily have opened a

Twitter account under the name @JarecWentworth.  As an example, a fake, unverified account purporting to be the account of actor Chris Rock (@ozchrisrock) has 99,600 followers on Twitter.

The government has produced nothing in discovery that establishes that the unverified account of @JarecWentworth was run by or controlled by Mr. Brank.  As such, evidence of a Tweet purportedly posted on an unverified account with no connection to Mr. Brank has entirely too speculative a connection to Mr. Brank, and lacks foundation to be connected to Mr. Brank.  *See* Fed. R. Evid. 401, 402, and 403.

> **2.     Even if the Government Could Show that Mr. Brank Ran the @JarecWentworth Twitter Account, the Government May Not Bring in Unreliable Oral Testimony Regarding the Purported Tweet; the Testimony and Evidence Is as to the Specific Terms of a Writing; the Best Evidence Rule Prohibits Such Testimony**

Even if the government could establish a connection or lay a foundation connecting Mr. Brank to the @JarecWentworth Twitter account, they would be barred from introducing unreliable oral testimony about a purported writing that the government is unable to produce.

The best evidence rule is embodied in Fed. R. Evid. 1001-1008.  Fed. R. Evid. 1002 states as follows: "To prove the content of a writing . . . the original writing . . . is required, except as otherwise provided in these rules or by Act of Congress."  Writings and recordings are defined in Fed. R. Evid. 1001 as "letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation."  Thus, it should be undisputed that the purported February 16, 2015 Tweet on the @JarecWentworth account would constitute a "writing" under these rules.

The Ninth Circuit explained the purposes of the best evidence rule in *Seller v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1986):

4

The modern justification for the rule has expanded from prevention of fraud to a recognition that writings occupy a central position in the law. When the contents of a writing are at issue, oral testimony as to the terms of the writing is subject to a greater risk of error than oral testimony as to events or other situations. The human memory is not often capable of reciting the precise terms of a writing, and when the terms are in dispute only the writing itself, or a true copy, provides reliable evidence. To summarize then, we observe that the importance of the precise terms of writings in the world of legal relations, the fallibility of the human memory as reliable evidence of the terms, and the hazards of inaccurate or incomplete duplication are the concerns addressed by the best evidence rule. See 5 Louisell & Mueller, Federal Evidence, § 550 at 283; McCormick on Evidence (3d ed. 1984) § 231 at 704 . . . .

(Citation omitted.)

Here, the concerns at the heart of the rule are directly implicated.  The government apparently intends to offer oral testimony from D.B. about what D.B. recalls hearing read to him over the phone, from someone purporting to read a Tweet from the @JarecWentworth account.  There are multiple problems and levels of unreliability here.  Moreover, D.B.'s recollection of what the third party read to him over the phone does not even match up with the purported "re-post" that the government also intends to introduce (which is further addressed below).  That is, D.B.'s memory about the precise terms of the writing -- where the precise terms surely matter where the charge is regarding interstate threats to reputation under 18 U.S.C. § 875(d) -- is unreliable, and presents a "greater risk of error than oral testimony as to events or other situations."

### a.   The Exceptions to Rule 1002 Set Out at Rule 1004 Do Not Save the Government's Proposed Evidence

The exceptions to Rule 1002, set out at Rule 1004 do not save the government's proposed evidence.

5

Rule 1004(a) provides an exception where "all the originals are lost or destroyed, and not by the proponent acting in bad faith." Here, the government has made no showing that "all the originals or lost or destroyed."

Rule 1004(b) provides an exception where "an original cannot be obtained by any available judicial process." The government has made no showing that the original cannot be obtained by any available judicial process. It is not clear what attempts the government has made to obtain the original Tweet. What is clear is that the government conducted a Google search. That, surely, is insufficient to meet this exception.

Rule 1004(c) provides an exception where "the party against whom the original would be offered had control of the original, was at that time put on notice, by pleadings or otherwise, that the original would be the subject of proof at trial or hearing; and fails to produce it at the trial or hearing . . . ." First, the government cannot establish that Mr. Brank "had control of the original." Second, the government cannot show that, even if he did have control, that he was "at that time put on notice, by pleadings or otherwise, that the original would be the subject of proof at trial."

Rule 1004(d) provides an exception where "the writing . . . is not closely related to a controlling issue." Here, the entire case is about purported threats to reveal personal information on Twitter made by Mr. Brank. The writing is very much "closely related to a controlling issue."

**3.  Even Assuming the Best Evidence Rule Did Not Bar the Proposed Testimony, the Proposed Evidence, of D.B's Memory of the Purported Tweet Being Read to Him over the Phone by a Third Party, Is Entirely Too Unreliable to Be Admissible**

As should be plain, oral testimony about what D.B. remembers about a writing that was purportedly read to him off of the @JarecWentworth Twitter feed by a third party over the phone is riddled with unreliability -- to the extent that it is plainly inadmissible. *See* Fed. R. Evid. 401, 402, and 403.

6

**C.     The Proposed Evidence of the Re-Post on the @STR8UPGAYPORN!**
**        Twitter Feed Is Also Inadmissible**

**        1.      The "Re-post" Or "Re-tweet" Was a Post Entirely Composed by**
**                the Unknown Third Party Who Runs the @STR8UPGAYPORN!**
**                Twitter Account; the Post Was Not an Automated Twitter Retweet**

The FBI Google search makes clear that the purported "re-post" on the
@STR8UPGAYPORN! account was entirely composed by the user at the
@STR8UPGAYPORN! account.  The @STR8UPGAYPORN! Tweet is as follows:

> ? RT @JarecWentworth How many porn stars know a man named D[--]? Yes
> D[--] http://t.co/rwjji7D6ac

Ex. C, Bates 259-60.[2]

The text of the Tweet itself shows that it was not an automated "re-tweet."
Twitter has a function known as an automated "retweet": a user reading a post of
another user can click a button at the bottom of the post, which will repost the other
user's tweet on the reader's own Twitter feed.  *See* FAQs about Retweets (RT) on
Twitter, available at << https://support.twitter.com/articles/77606-faqs-about-retweets-
rt# >>, last visited April 29, 2015 at 4:03 p.m. ("A Retweet is a re-posting of someone
else's Tweet.  Twitter's Retweet feature helps you and others quickly share that Tweet
with all your followers . . . .   Sometimes people type RT at the beginning of a Tweet to
indicate that they are re-posting someone else's content.  This isn't an official Twitter
comman or feature, but signifies that they are quoting another user's Tweet.").  *See also*
Wikipedia Entry on Twitter, available at <<
http://en.wikipedia.org/wiki/Twitter#Format >>, last visited April 29, 2015 at 4:07 p.m.
("To repost a message from another Twitter user and share it with one's own followers,
a user can click the retweet button within the Tweet.")  The automated Retweet feature

---

[2] Defense counsel has attempted to locate the original @STR8UPGAYPORN!
Tweet to access the link attached at the end of the Tweet, but has been unable.

7

is akin to the "Share" feature on Facebook: clicking the Retweet button on a Tweet simply posts the original Tweet, in total, without alteration or addition, on one's own Twitter feed.

What the @STR8UPGAYPORN Tweet appears to be is a manual retweet, where the user did not use the automatic Retweet function available on Twitter (which, again, would have simply fully reproduced, without alteration or addition, the original Tweet). Rather, the user at @STR8UPGAYPORN composed a new Tweet, with whatever content the user at @STR8UPGAYPORN saw fit to include or omit.  This article on the site About.com gives an example of this type of manual retweet:

> Retweeting is very easy.
>
> If you are retweeting as a reply to a tweet or direct message, simply type in your reply, follow it with "RT" to signify it is a retweet, the @username of who you are replying to and end with the original message.
>
> So if @tom asked you "how are you doing?", you would reply: "pretty good RT @tom how are you doing?"

Daniel Nations, *What is a Retweet?*, About.com, available at << http://webtrends.about.com/od/twitter/a/twitter_help_what_is_a_retweet.htm >>, last visited on April 29, 2015 at 4:13 p.m.

As the above clarifies, the @STR8UPGAYPORN! February 16 Tweet purporting to be a Retweet of something posted by the @JarecWentworth account, simply has no demonstrated connection to (1) anything actually posted by the @JarecWentworth account, especially when the author of the @STR8UPGAYPORN! account and his/her motives and intentions are entirely unknown and the author of the @STR8UPGAYPORN! had no obligation to faithfully reproduce whatever he or she was purporting to retweet, if that is in fact what he or she was intending to do, or (2) Mr. Brank, given the multiple levels of disconnection between whatever

@STR8UPGAYPORN! composed, and whatever @JarecWentworth posted, and the lack of demonstrated connection between the @JarecWentworth account and Mr. Brank.

Accordingly, evidence of the @STR8UPGAYPORN purported "re-post" must be excluded as irrelevant and unreliable.  Moreover, even if it did have any marginal relevance, it would be unduly prejudicial and likely to confuse the issues and the jury. *See* Fed. R. Evid. 401, 402, and 403.

> **2.     For the Reasons Set out Above, the Best Evidence Rule Also Bars the Proposed Evidence of the @STR8UPGAYPORN! Purported Re-Post or Retweet**

For the same reasons set out in connection with the evidence of D.B.'s recollection of the Tweet read to him over the phone, the evidence of the purported re-post or retweet by @STR8UPGAYPORN! is excluded under the best evidence rule. As with the evidence of the tweet read to D.B., none of the exceptions in Fed. R. Evid. 1004 applies.

**D.    Evidence of the Tweet or Retweet, Offered for the Truth of the Matter Asserted, Namely, that Mr. Brank Authored the Tweet, Is Inadmissible Hearsay**

The government's case against Mr. Brank rests on the true identity of the author of the purported February 16, 2015 Tweet.  The government will seek admission of this e-mail in an attempt to prove that Mr. Brank authored the February 16, 2015 Tweet. The government will likely argue that Mr. Brank was the author of the Tweet because the @JarecWentworth account has pictures of Mr. Brank and Jarec Wentworth was the acting names used by Mr. Brank.  Those points do not establish a connection between the unverified account and Mr. Brank, as set out above.  But, the government would be offering the content of the Tweet for the truth of the matter asserted: namely that because it was "signed" by "@JarecWentworth" it was in fact authored by and sent by Mr. Brank.  The evidence would also be offered to establish the truth of the matter

9

asserted: that the Tweet named D.B.  The defense specifically challenges the admission of the content of the Tweet that states it is from "Jarec Wentworth" -- and therefore Teofil Brank -- and that it named D.B., as inadmissible hearsay.  The same argument applies to the purported "re-post" made by @STR8UPGAYPORN!

Courts have found that names on ledgers, bills, hotel registration cards, and receipts introduced to prove the identity or involvement of a defendant in a crime are inadmissible hearsay because the names on those documents (the out-of-court statements) are offered for their truth.  For example, in *United States v. Ordonez*, 722 F.2d 530 (9th Cir. 1983), amended by 737 F.2d 793 (9th Cir. 1984), the Ninth Circuit found that entries in a ledger offered by the government to prove the defendant's involvement in the crime were offered for the truth of the matter asserted.  Because specific information conveyed by the writings, namely the words and numbers in the ledger, asserted or implied that the defendant engaged in the sale of drugs, the ledger was deemed inadmissible hearsay.  *Id.* at 799-801.  *Accord United States v. Gonzales*, 307 F.3d 906, 909 (9th Cir. 2002) (noting that pay/owe sheets would be hearsay if they were offered by government to prove truth of their contents).

Similarly, in *United States v. Jefferson*, 925 F.2d 1242, 1252-53 (10th Cir. 1991), pager bills were found to be inadmissible hearsay because they were offered to prove the truth of the matter asserted on the bills: viz., that the defendant whose name appeared on the pager bills had in fact purchased pager service.  The court noted that "the fact that evidence was introduced to link circumstantially the accused to the crime does not render the hearsay violation any more acceptable."  *Id.* at 1253.

Again, in *United States v. McIntyre*, 997 F.2d 687, 701 (10th Cir. 1993), money order receipts offered to show the means of a money transfer and the involvement of certain individuals in the alleged conspiracy were deemed hearsay because they were offered for the truth of the matter asserted on the face of the receipts.  In the same case, hotel registration cards offered to prove that a particular individual checked into two motels on the dates recorded and paid for the rooms were inadmissible hearsay because

the statements on the cards (i.e., the names of the individuals) were offered for the truth of the matter asserted.  *Id.* at 698-699; *accord United States v. Vigneau*, 187 F.3d 70, 74 (1st Cir. 1999) ("Hearsay, loosely speaking, is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c).  Whoever wrote the name 'Patrick Vigneau' on the 'To Send Money' forms was stating in substance: 'I am Patrick Vigneau and this is my address and telephone number'"; finding name printed on send-money form to be inadmissible hearsay when offered to prove that defendant Patrick Vigneau did in fact send money); *United States v. Davis*, 596 F.3d 852, 857 (D.C.Cir. 2010) (noting that sender and recipient labels on bills "did contain assertions" and that labels in effect stated "'This document is a message from The Hartford, and its contents pertain to Phi Beta Sigma'"; upholding trial court's finding that labels on bills were inadmissible hearsay).

Here, whoever wrote the name "Jarec Wentworth" in connection with the purported February 16, 2015 Tweet, whether it be the unverified account name Jarec Wentworth on Twitter, or the Tweet composed on February 16, 2015 by @STR8UPGAYPORN!, was "stating in substance: 'I am [Jarec Wentworth, aka Teofil Brank]. . .'" *Vigneau*, 187 F.3d at 74, or "Jarec Wentworth, aka Teofil Brank, wrote this.

Similarly, the testimony of D.B. or the evidence of the @STR8UPGAYPORN! Retweet would be for the purposes for establishing the truth of the matter: namely that the @JarecWentworth February 16, 2015 Tweet mentioned the first name of D.B.

//

//

//

//

//

/

11

The application of the rule against hearsay here is simple: the name connected with the purported February 16, 2015 Tweet (or Retweet), to the extent it is offered to prove that Mr. Brank in fact authored and sent the Tweet, and/or that the purported Tweet named D.B., is inadmissible hearsay and should be excluded.

### III. CONCLUSION

For the foregoing reasons, the motion should be granted and evidence of the Tweet or Retweet should be precluded.

Respectfully submitted,

HILARY POTASHNER
Acting Federal Public Defender

DATED:  April 30, 2015          By   */s/ Ashfaq G. Chowdhury*
SEEMA AHMAD
ASHFAQ G. CHOWDHURY
Deputy Federal Public Defenders
Attorneys for Defendant, TEOFIL BRANK

<u>**GOVERNMENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 2**</u>

## I.  INTRODUCTION

Under the Federal Rules of Evidence a party may seek to admit "other evidence" of an original writing if the original writing, or this case Tweet, is no longer available. Fed. R. Evid. 1001, 1004. Here, the government will be offering proof of the Tweet in question: "RT @JarecWentworth How many porn starts know a man named [Victim's name]" (the "Tweet") through the testimony of the Victim and by a re-Tweet posted on a blog the same day defendant Teofil Brank also known as "Jarec Wentworth" ("defendant") purported to make a post on his Twitter account.  Other evidence of the Tweet is required because the original Tweet has been lost or destroyed or deleted.  Proper foundation will be laid for the testimony of the Victim (who was familiar with defendant's Twitter account) and the testimony of the case agent who conducted the open source search and found the re-Tweet of the Tweet on a blog site St8upgayporn.com.

Testimony about the original Tweet and the re-tweet will be offered to show that the writings simply existed on the internet on February 16, 2015, at or near the time that the extortion began. Any questions about authorship or origination of the Tweet, and re-Tweet, go to weight, which is a question for the jury and not one of admissibility.

## II.  STATEMENT OF FACTS

On or about March 3, 2015, the victim of the extortion scheme ("Victim") met with the FBI to report defendant's previous and continued extortion attempts threatening Victim's reputation via text message communications.  The Victim had extracted the text

13

messages from his phone and provided them to the FBI.  Some of the relevant text messages sent from defendant's phone to Victim's phone included the following:

- 2/16/2015: "I do have a twitter and your photos. Lies can be made or Maybe it's the truth"
- 2/16/2015: "Check my twitter, the conversation will grown [sic] and questions will be asked. You lied to me and treated me like Shit. I asked again and you put it behind you. Now it's biting your ass"
- 2/16/2015: "I can't get friendship anymore, because who will want to be friends with black mail. I only wanted to drive cars and Enjoy your company. I guess findin you boys is out of the picture So it leaves me with Nothing to want out of this. So I'm just going to bite hard. You got money but I Don't want that.  Money won't wash away What people will read and see of you. Wow I guess I hold the cards right now"
- 2/16/2015: "I want a new car, motorcycle and both hands full of cash"
- 2/16/2015: "It's the car or another 250,000 cash. Taxes"
- 2/16/2015: "How do I know you won't report me for extortion"

The Victim explained to the FBI that he called a friend, Justin Griggs, on February 16, 2015, and asked Griggs to check defendant's social media accounts for any posts regarding Victim. (Def. Mot., Ex. A at 3).  On February 16, 2015, Griggs told the Victim that defendant had posted on defendant's Twitter account something to the effect of "Does anyone know a guy name [Victim's name]?"  Victim became afraid and interpreted this post to be a warning of further exposure on defendant's Twitter account if Victim failed to meet defendant's demands.  As a result of the extortion communications

14

and the Victim's belief about the Tweet posted on the internet on February 16, 2015, the Victim wired the defendant $500,000 and gave defendant possession of the Victim's Audi r8.

Notwithstanding Victim's concessions, the extortion continued as defendant continued to make additional demands during phone calls and text messages.  This continued extortion – and Victim's fear of further exposure on Twitter – led the Victim to the FBI.

During the Victim's March 3, 2015 meeting with the FBI, FBI agents reviewed the text messages and directed the Victim to arrange a meeting between defendant and an undercover agent, who would pose as the Victim's associate, to deliver the demanded $1,000,000.  The meeting occurred on March 4, 2015, at the Starbucks coffee shop where defendant attempted to pick up the title to the Victim's Audi r8 and the $1,000,000 in cash.  Defendant was arrested at that March 4, 2015 meeting.

After defendant's arrest, FBI agents searched for the Tweet (which was posted on February 16, 2015 referenced in defendant's own text messages), but the Tweet was no longer present on the @JarecWentworth Twitter account.  Deleted tweets are generally not preserved or archived on Twitter's servers. See https://support.twitter.com/articles/41949#.  Law enforcement requests to Twitter for the Tweet have been fruitless.

Agents, however, conducted an open source internet search for the Tweet and located a re-tweet of the @JarecWentworth Tweet on Str8upgayporn.com stating: "RT @JarecWentworth How many porn starts know a man named [Victim's name]."  This is a re-tweet that appears to have been manually entered (due to the use of RT) and much like a forwarded email, which could be modified in theory by the party

15

resending it (although this is not customary).  This re-Tweet was posted on the February 16, 2015, that is, the same day that Griggs told the Victim he saw a similar tweet on @JarecWentworth Twitter Account.

## III.  ARGUMENT

### A.  The Verified Account Status is Irrelevant to Admissiblity

The @JarecWentworth Twitter account exists on the Internet and contains tweets as well as pictures of the defendant.  Nevertheless, the defendant seeks to exclude all evidence of the Tweet as "speculative" or lacking in foundation because the Tweet in question was posted on an "unverified account" with no confirmed subscriber information. (Def. Mot. No. 2).  The government is prepared to present testimony by witnesses, including the Victim, that they have seen this @JarecWentworth account and understood it to be defendant's account.

For the purpose of admissibility, laying foundation only requires evidence "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  "The proponent need only present enough evidence "to make out a prima facie case that the proffered evidence is what it purports to be." United States v. Lanzon, 639 F.3d 1293, 1301 (11th Cir. 2011). Evidence may be authenticated through the testimony of a witness with knowledge. Fed. R. Evid. 901(b)(1).

As with paper documents the mere possibility of alteration is not sufficient to exclude electronic evidence or to render evidence inadmissible.  United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991); United States v. Vansant, 423 F.2d 620, 621 (9th Cir. 1970).  The possibility of a break in the chain of custody goes only

16

to the weight of the evidence. Id.  Similarly, possibility of alteration goes to weight, not admissibility. Lanzon, 639 F.3d at 1301 (affirming district court's admission of Word documents containing copied and pasted conversations from instant message interchange); United States v. Salcido, 506 F.3d 729, 733 (9th Cir. 2007)(agents testified as to chain of custody with respect to electronic evidence obtained).

In Lanzon, a detective failed to save the instant message "chat screens" themselves but transferred the contents of the messages into a transcript document that was used at trial.  The defendant there claimed that the transcripts should not be admitted at trial because the original messages were lost and there was no way to ascertain accuracy. The Court rejected his argument because the detective was a participant in the conversations, and therefore, was a competent witness with knowledge and provided competent evidence to authenticate the copied message. Lanzon, 639 F.3d at 1301.

Here, the government will offer agent testimony regarding an open source search for the Tweet that was found on Str8upgayporn's site.  More than the detective in Lanzon, the agents here took a screen shot of the image to document its existence.  The Victim will testify that he knows @JarecWentworth to be defendant's account. Such testimony together is sufficient foundation to show that the Tweet existed on the internet in connection with an account associated with defendant.  Whether jury choses to believe that defendant managed the unverified account (and actually posted the Tweet itself) is a matter of weight.  Moreover, it should be noted that the Tweet would be introduced principally to show that it existed on the internet on February 16, 2015, consistent with

17

Victim's account and consistent with references made to the Tweet in defendant's text messages.

Like a prepaid phone without subscriber information, the mere absence of subscriber information for a phone does not preclude references to the phone or recordings from the phone number to the extent there is some connection to the defendant. In this instance, witnesses can testify that @JarecWentworth was defendant's account, used by defendant, verified or not.  Thus, a tweet associated with that account and posted at the time of the extortion is relevant.

Finally, it should be no surprise that @JarecWentworth is not a verified account because "Jarec Wentworth" is only a persona or alias of the defendant Teofil Brank. The important fact, however, is that the account exists, the Victim knew it existed, the Victim understood it be managed by defendant, the Victim knew the account to have a substantial following (which was all relevant to the Victim's perception of a true threat).

### B.    The Best Evidence Rule Allows For "Other Evidence" of a Writing if the Original is No Longer Available.

The best evidence rule initially requires the proponent to produce the original to prove the contents of a writing, recording, or photograph. Fed. R. Evid. 1001; United States v. Howard, 953 F.2d 610, 612 n. 1 (11th Cir.1992).  An original is not required, however,  if it is lost or destroyed, except when lost or destroyed through bad faith, or if it is otherwise unobtainable.  Fed. R. Evid. 1004.

Other evidence of the content of the writing is admissible if the originals were lost or deleted or otherwise unavailable. Specifically, the Federal Rules of Evidence Rule 1004 states:

18

> An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith; (b) an original cannot be obtained by any available judicial process; (c) the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or (d) the writing, recording, or photograph is not closely related to a controlling issue.

Fed. R. Evid. 1004.

Here, the original tweet is no longer available and appears to have been deleted (potentially by defendant). This rule providing that the original document is not required but other evidence of contents may be admissible if the original is not obtainable contemplates relatively lax standard of unavailability. <u>United States v. Taylor</u>, 648 F.2d 565 (9th Cir. 1981). As a result, the government seeks to admit "other evidence" of the writing or Tweet (i) through the testimony of D.B. and (ii) through admission of the re-Tweet on Str8upgayporn.com.

## 1.    The Testimony of D.B. Is "Other Evidence" of the Tweet Writing

Because the original Tweet was lost (or destroyed by defendant), the government is permitted to introduce other evidence in the form of testimony by D.B. about the Tweet. The defendant claims that the testimony of D.B. should be not be admitted as "other evidence" because it is unreliable to the extent it is based on human memory. This, however, is (again) a question of weight and not of admissibility. Indeed, in the case cited by defendant, <u>Seiler v. Lucasfilm, Ltd</u>., 808 F.2d 1316, 1321 (9th Cir. 1986), the court did not exclude oral testimony about the original writing because of unreliability issues with witness testimony. Rather, the court excluded reconstructions because the Court found that

19

proponent of the reconstructions failed to show that the original writings were not lost or destroyed in bad faith (where the proponent had control of the originals).  Id.  Had the proponent been able to prove a lack of bad faith, his reconstructions created years after the original and offered as other evidence "would have been admissible and then their accuracy would have been a question for the jury."  Id.

Here, the Victim never had control or access to the original Tweet -- the defendant did. Therefore, here there are no issues of bad faith destruction by the Victim or the government.  The government has proffered evidence that the original Tweet has been lost or destroyed to no fault of the Victim or the government.  Thus, as noted in Seiler, the secondary evidence (i.e., testimony regarding re-Tweet) should be admissible and any questions about its accuracy of the Tweet is a question for the jury.

D.B.'s testimony about the post, based on what Griggs told him, is non-hearsay because it would be offered to "show the effect on the listener" namely, that the post frightened the Victim and substantiated the true threat perceived and led to the Victim's payments to defendant.

### 2.    The Re-Tweet on Str8upgayporn.com Is Admissible Other Evidence

The re-Tweet which the government offers as secondary or other evidence of the original Tweet should also be admissible under Federal Rule 1004 and the Seiler logic.  Had the proponent of the writing been able to show originals were not lost in bad faith, the court would have admitted reconstructions created *years after the original*.  Seiler, at 1321. Here, the re-Tweet post on

20

Str8upgayporn.com was created on the *same day* as the original Tweet. Because the original Tweet is not available, this content should be admitted and submitted to the jury which can evaluate the closeness in time and content between the post and D.B. testimony about the post.

## IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion in limine.

Dated: April 30, 2015              Respectfully submitted,

                                   STEPHANIE YONEKURA
                                   Acting United States Attorney

                                   ROBERT E. DUGDALE
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                   _____/s/_____
                                   KIMBERLY D. JAIMEZ
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA
                                   (E-signed with email authorization
                                   from Ms. Jaimez)

21

## DECLARATION OF ASHFAQ G. CHOWDHURY

I, Ashfaq G. Chowdhury, hereby state and declare as follows:

**1.**     I am a Deputy Federal Public Defender in the Central District of California.  I am assigned to represent Teofil Brank in CR 15-131-JFW.

**2.**     Mr. Brank seeks to exclude from evidence at trial any and all evidence of D.B.'s recollection of the Tweet purported posted on the @JarecWentworth Twitter feed, on or about February 16, which purportedly mentioned D.B.'s first name, and any and all evidence regarding a purported "re-post" of the February 16, 2015 @JarecWentworth Tweet on another Twitter feed, unconnected with Mr. Brank, under the handle @STR8UPGAYPORN!, also on February 16, 2015.  See Ex. B an C.

**3.**     I have discussed the disputed evidence regarding the Tweet and Retweet with counsel for the government, Assistant United States Attorney Kimberly Jaimez, along with Assistant United States Attorney Lisa Feldman. Deputy Federal Public Defender Seema Ahmad and I participated in a meet-and-confer with Ms. Jaimez and Ms. Feldman, pursuant to the Court's Trial Order, at the offices of the United States Attorney, on April 28, 2015.  At the April 28 meeting, I raised our objection to the introduction of the evidence of the Tweet an Retweet.  Ms. Jaimez considered our objections, and advised that she disagreed, and would argue that the evidence was not barred, unreliable, or inadmissible, and that she would seek to introduce the evidence at trial.  Ms. Jaimez confirmed at the meeting that the government did not have in its possession the original purported Tweet naming D.B.'s first name from the @JarecWentworth Twitter account.

**4.**     As set out in the motion above, defense counsel believes that

//

//

22

introduction of the evidence of the Tweet and/or Retweet

(1) lacks any connection to Mr. Brank,

(3) is barred under the best evidence rule;

(4) is entirely too speculative and unreliable to be admissible, and

(5) is inadmissible hearsay offered for the truth of the matter asserted, namely that Mr. Brank authored these emails.

5.     Attached as Ex. A to this Declaration is a true and correct copy of a redacted report of an FBI interview with Douglas Axel, who represents D.B. in this matter.  This report was produced to the defense in discovery in this matter.

6.     Attached As Ex. B to this Declaration is a true and correct copy of a redacted report of an FBI report on a Google search conducted in an attempt to find the Tweet at issue in this motion.  This report was produced to the defense in this matter.

I declare under penalty of perjury that the foregoing is true and correct to\ the best of my knowledge.

DATED: April 30, 2015          /s/ Ashfaq G. Chowdhury

                                            Ashfaq G. Chowdhury
                                            Deputy Federal Public Defender

23