# EXHIBIT A

Call -1 ASAS     4/30/15

MISDO - off
Re file

By forfeite

# EXHIBIT B

FD-302 (Rev. 5-8-10)

-1 of 1-



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    03/16/2015

An Affidavit of Adverse Claim was served to WELLS FARGO, Wilshire Westwood Branch, ████████████████████████████████████ The affidavit was served to ALICE BUTROS, WELLS FARGO Service Manager, on March 13, 2015, at 5:15PM.

The Affidavit of Adverse Claim, executed on March 13, 2015, by Special Agent JONATHAN BAUMAN, provided WELLS FARGO notice to refuse access to account number 8110313197, and any other WELLS FARGO bank account held by TEOFIL BRANK, date of birth 10/02/1989, California drivers license D8242012, in an amount up to $500,000 for three court days to include the day of delivery.

A copy of the Affidavit of Adverse Claim described above is attached.

| | | |
|---|---|---|
| Investigation on   03/13/2015  at  Los Angeles, California, United States (In Person) | | |
| File #  ████████████ | Date drafted | 03/16/2015 |
| by  MICHAEL S WINNING | | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

US v. Brank, 15-131 Bates 0099



## Enterprise Fax

| | | | |
|---|---|---|---|
| **To:** | Jonathan Bauman | **From:** | |
| **Fax:** | | **Phone:** | |
| **Phone:** | | **Date:** | March 16, 2015 |
| **Fax Number:** | | | |
| **Re:** | | | |

\* Comments:

NOTICE: CONFIDENTIAL AND PRIVILEGED INFORMATION -
This fax may contain confidential and privileged material for the sole use of the intended recipient(s).
Any review, use, distribution, or disclosure by others is strictly prohibited. If you are not the intended
recipient (or authorized to receive for the recipient), please contact the sender by telephone and destroy
all copies of this correspondence.

If you no longer wish to receive faxes from us, please contact the sender of this fax
and we will remove your fax number from our list.
Please allow us up to 10 business days to update our records.





Date Entered: March 6, 2015                           Date of Service: March 6, 2015

Federal Bureau Of Investigation
Jonathan Bauman

Subject: State Of California vs Teofil Brank
WF Case

_____    No Records of indebtness
_____    No Funds
__X__    Hold(s) have been placed on the following accounts

### ACTUAL AMOUNT OF GARNISHMENT: $9,999,999,999,999.99

| Account Type w/Legal Title Customer Address | Account Number | Balance Amount | Holding Amount | Attorney Fee | SSN#/TIN# |
|---|---|---|---|---|---|
| Saving Account Teofil Brank 248 S Western Ave Apt 208,Los Angeles,CA,90004-4144 | XXXXXXXX6764 | $400,009.86 | $400,009.86 | 0.00 | XXX-XX-4913 |
| Saving Account Teofil Brank 248 S Western Ave Apt 208,Los Angeles,CA,90004-4144 | XXXXXXXX2536 | $50,184.19 | $50,184.19 | 0.00 | XXX-XX-4913 |
| Demand Deposit Account Teofil Brank 248 S Western Ave Apt 208,Los Angeles,CA,90004-4144 | XXXXXXXX3197 | $2,463.00 | $2,463.00 | 0.00 | XXX-XX-4913 |

**Account Information:**

Thank you.
Chere Oliver
Legal Order Processing
Wells Fargo Bank NA

 **Message Center**

---

**Folder: Inbox**

| | | | Subject | From | Date 🗓 |
|---|---|---|---|---|---|
| | | | RE: Wire Details | ▆▆▆▆▆ | 2/25/15 12:39 PM |
| ✗ Delete | | ✍ Compose | | | You have 1 message. |

**Subject: RE: Wire Details**
**From:** ▆▆▆▆▆▆
**Date:** 2/25/15 12:39 PM

| ↩ Reply | ✗ Delete |
|---|---|

---

▆▆▆▆▆

Please see the requested information below.

$500,000

02/17 wired to:
Bank: Wells Fargo
ABA: 121000248
Acct: Mr. Teofil Brank
Acct#: 8110313197

- Message center is for general inquiries and the posting of material. Market orders and other timely matters should not be sent via the message center. To place a market order or for items that are considered timely, you should contact your Private Wealth Management Professional.



Please read our Legal Disclosures & Disclaimers and Customer Agreement

© Copyright 2015
The Goldman Sachs Group, Inc.
All rights reserved.

Goldman, Sachs & Co. Member SIPC.

System response and account access times may vary due to market conditions, system performance and other factors.

U.S. v. Teofil Brank, 15-131   Bates No. 0050

 **All Goldman Sachs Accounts for Deposits And Withdrawals From 17-Feb-2015 To 17-Feb-2015**

Base Currency :USD

**Transactions**

| Transaction Date | Process Date | Transaction Type | Description | Activity Class | Settlement Amount | Settlement Ccy | Settlement Amount (Base) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| 17-Feb-2015 | 17-Feb-2015 | Deliver | WELLS FARGO BANK, NA 8110313197 MR. TEOFIL BRANK PER CLIENT REQUEST FED FUNDS | Wire | 500,000.00 | USD | 500,000.00 |

- Your account balances, positions and transactions may not reflect certain transactions that have been effected, but not yet posted to your account.
- The above transaction information does not constitute a trade confirmation or official statement of your account.
- N Recent news is available regarding this company. G Goldman Sachs has recently published research regarding this company. News and Research indicators are based on Eastern Standard Time (United States).
- The Bank Deposit Account (BDA) and Certificate of Deposit Account are offered by Goldman Sachs Bank USA, a Member of the FDIC. Bank Deposits and Certificates of Deposit will be held in your Goldman, Sachs & Co. account and are FDIC-insured, up to at least $250,000. Note that the maximum FDIC insurance available for funds in these accounts, together with any other deposit accounts you may hold at the Bank is based upon the ownership rights and capacities in which these accounts are maintained at the Bank. For more information on how FDIC insurance coverage works, visit www.fdic.gov.

Securities, mutual funds, annuities and other non-deposit investment products are issued by Goldman, Sachs & Co. BDA and Certificate of Deposit Account are offered by Goldman Sachs Bank USA, an affiliate of Goldman, Sachs & Co. Securities, mutual funds, free credit balances, annuities and other non-deposit investment products are not deposits or other obligations of Goldman Sachs Bank USA or any other bank; are not FDIC-insured, are not insured against loss of value by any governmental agency, and are subject to investment risk, including possible loss of principal amount invested. FDIC insurance and SIPC coverage are different. SIPC covers against loss of securities (up to a maximum of $500,000 per customer) or cash (up to a maximum of $250,000 within the aggregate $500,000 customer limit) in the event of the bankruptcy of a securities broker-dealer, such as GS&Co. SIPC coverage does not protect against a decline in the value of securities. FDIC insurance protection, up to an aggregate limit of $250,000 covers against loss in the event a depository institution, such as the Bank, fails. Securities, mutual funds and similar types of non-deposit investment products are not covered by FDIC deposit insurance.

U.S. v. Teofil Brank, 15-131   Bates No.
0051

Portfolio - Transactions - All Goldman Sachs Accounts                                                                      2/25/15, 12:49 PM

- GSAM Separate Accounts will reflect current date trading activity after 4:00 PM ET
- Global Manager Strategies$^{SM}$ and GMS Alpha+$^{SM}$ are registered service marks of Goldman, Sachs & Co.
- Click for important information concerning Goldman Sachs Financial Markets, L.P. account(s).
- Prices may be delayed depending on the applicable exchange. Please review this schedule of delayed and current prices by exchange or market center.



Please read our Legal Disclosures & Disclaimers
and Customer Agreement

© Copyright 2015
The Goldman Sachs Group, Inc.
All rights reserved.

Goldman, Sachs & Co. Member SIPC.

System response and account access times may
vary due to market conditions, system performance
and other factors.

U.S. v. Teofil Brank, 15-131   Bates No.
0052

# EXHIBIT C

FD-302 (Rev. 5-8-10)



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry _____ 03/17/2015

        On March 4, 2015, ETIENNE KAALA YIM, date of birth ████
████████████████████████████████████████████████████, was interviewed at the EL
SEGUNDO POLICE DEPARTMENT (ESPD), address 348 Main Street, El Segundo,
California 90245, subsequent to the arrest of TEOFIL BRANK. Also present
for this interview was Supervisory Special Agent (SSA) Joseph Brine.  After
being advised of the identity of the interviewing Agents and the nature of
the interview, YIM provided the following information:

    Prior to the commencement of the interview, Agents advised YIM he was
not in custody and was free to leave at any time. The fact that YIM was
free to leave was reiterated several times throughout the interview
process. YIM repeatedly acknowledged that he understood he was speaking
with Agents voluntarily and wished to do so. YIM was also advised that
although not authorized to make promises of any kind, to include promises
of leniency should YIM be charged with a crime, the fact that YIM was
cooperating with Agents over the course of their investigation would be
communicated to the prosecutor.

    YIM had moved to the San Diego, California area from his birth country
of FRANCE approximately two and a half years ago. YIM began working at an
ice cream shop named THE BAKED BEAR ██████████████████████████████████████
███████████████████. YIM moved in with a roommate he found on CRAIGSLIST
named ERIC GELLER. ERIC GELLER was a party bus promoter in San Diego. YIM
met TEOFIL BRANK approximately two years ago through GELLER. BRANK and
another Russian male involved in the homosexual pornography industry, the
name of whom he could not recall, were associates of GELLER. GELLER was not
involved with the homosexual pornography industry and YIM speculated that
BRANK and GELLER had most likely met partying in San Diego.

    YIM knew BRANK to be very popular in the gay porn community. BRANK was

---

Investigation on _03/04/2015_ at _Los Angeles, California, United States (In Person)_

File # ████████████████                                      Date drafted _03/11/2015_

by _MICHAEL S WINNING , BAUMAN JONATHAN H_

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of <u>Interview of ETIENNE KAALA YIM</u>                   , On <u>03/04/2015</u> , Page <u>2</u> of <u>6</u>

known in the gay porn community by his industry alias JAREC WENTWORTH. YIM
is a heterosexual male and developed a platonic friendship with BRANK.

Over the past two years, YIM maintained contact with BRANK approximately
three times per year over social media such as SNAPCHAT. He exchanged
occasional messages with BRANK while BRANK was in Washington, DC, Texas,
and New York. Approximately two months ago, BRANK had communicated to YIM
through SNAPCHAT that he was moving to Los Angeles, California. YIM was
aware of BRANK's arrival in Los Angeles through social media, but BRANK did
not contact YIM until he had been in the area for approximately two weeks.

BRANK contacted YIM via telephone and they began hanging out. BRANK
visited YIM, they partied together in San Diego, and BRANK stayed at his
residence. YIM showed Agents an INSTAGRAM photo, dated six weeks prior,
taken the night BRANK and YIM first hung out in San Diego. BRANK drove home
to Los Angeles intoxicated that night in his green Ford Mustang. BRANK's
residence was an apartment in a large, approximately 10 floor, orange
colored building in the Koreatown area of Los Angeles.

YIM's next interaction with BRANK was approximately two weeks prior to
this interview. BRANK asked YIM to meet him at an address in San Diego, 800
Prospect Street, because he wanted YIM to see his new car. YIM met BRANK to
see the car, a 2014 black Audi R8 hardtop. YIM inquired as to where BRANK
received money to buy the car and BRANK told him he had a "sugar daddy"
that takes care of him named ███ Last Name Unknown (LNU).

YIM gave BRANK advice on investing his money and suggested he invest in
a business opportunity. YIM introduced BRANK to his friend BRAD HARTFORD,
as a networking contact to invest his new wealth.

YIM then traveled with BRANK to Las Vegas, Nevada in the Audi R8. BRANK
told YIM that he had received the car from ███ LNU. They stayed one night
at the VDARA Hotel (2600 West Harmon Avenue, Las Vegas, Nevada 89158). They
partied in Las Vegas with a friend named RICK POWELL and used cocaine.

After departing Las Vegas, BRANK and YIM returned to San Diego for only
a couple of hours before departing for Sacramento, California. BRANK
received a speeding ticket from the CALIFORNIA HIGHWAY PATROL while driving
north toward Sacramento at 89 miles per hour in the Audi R8.

YIM and BRANK stayed for two days at a MARRIOTT in Sacramento and BRANK
paid for everything. He utilized both cash and credit cards for financial
transactions. They partied in Sacramento and visited a strip club. BRANK
introduced YIM to a friend named JOE LNU. BRANK withdrew money from a WELLS

FD-302a (Rev. 05-08-10)

███████████

Continuation of FD-302 of  Interview of ETIENNE KAALA YIM _____ , On  03/04/2015 , Page  3 of 6

FARGO bank and gave the money to his brother. YIM could not recall the name
of BRANK's brother, but knew him to be a truck driver. YIM estimated that
BRANK gave his brother approximately $10,000 cash.

After departing Sacramento, they spent one day in San Francisco,
California at the MANDARIN ORIENTAL hotel (222 Sansome Street, San
Francisco, California 94104). Again, BRANK paid for everything to include
the hotel, bottle service at a club for $800, and the purchase of high end
clothing for both YIM and himself. BRANK also solicited a prostitute to
whom he paid $800. BRANK became very angry over the interaction with the
prostitute and YIM believed that BRANK was scammed.

After departing San Francisco, they returned to Los Angeles. They spent
two days at the MR. C Hotel (1224 Beverwil Drive, Los Angeles, Calforina
90035). BRANK again paid and purchased bottle service for approximately
$2800 at 1OAK night club (9039 Sunset Boulevard, West Hollywood, California
90069). While at 1OAK, YIM and TEOFIL met three girls from Vancouver, one
for whom BRANK showed particular affection.

BRANK and YIM departed Los Angeles and returned to San Diego. BRANK
convinced the Vancouver girls they had met at 1OAK to travel to San Diego.
The girls stayed with BRANK at a HILTON Hotel near the San Diego airport.
BRANK purchased two rooms, one room for himself and the girl for which he
had showed affection and another room for the other two girls.  The next
day BRANK returned to Los Angeles. YIM estimated that over the course of
this trip BRANK spent approximately $20,000.

BRANK next contacted YIM on the night of March 3, 2015. BRANK notified
YIM over a text message that he was traveling to San Diego with his
ex-girlfriend from Los Angeles. YIM described the ex-girlfriend as a white
female, 25 to 30 years old, with short blonde hair, named TINA LNU, who was
employed as a hair stylist.

BRANK next contacted YIM on March 4, 2015 via text. BRANK told YIM that
he needed help and asked for a ride to Los Angeles. YIM provided a digital
picture he had captured of the text exchange. This picture is digitally
attached. Over a telephone call, YIM agreed to drive BRANK to Los Angeles
if he would pay for the gas. BRANK provided few details regarding the
reason for the trip, but told YIM he needed to pick up some money. YIM
stated that BRANK was "sketchy" and "unclear."

YIM met BRANK at Room #216 of the TOWER 23 Hotel (723 Felspar Street,
San Diego, California 92109). BRANK spoke with YIM on the balcony of the
hotel room so TINA would not overhear. BRANK told YIM that they were going
to pick up $1 Million from the guy named ████LNU he had mentioned before.
BRANK explained that ████ LNU had offered to give him $5000 per month for

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of ETIENNE KAALA YIM _____, On  03/04/2015 , Page  4 of 6

the next five years, but BRANK did not want that offer. BRANK refused to tell YIM the reason for the money, but YIM believed it was "for sex or something."

BRANK asked YIM for help in acquiring a weapon. He was afraid someone might follow them after they picked up the money. BRANK knew YIM had access to a weapon because he had seen a photo of YIM at the gun range a weekend prior posted on YIM's INSTAGRAM account. YIM had borrowed the gun from his friend in San Diego named BEN WILLIAMS. YIM contacted WILLIAMS █ ████████████████████████ and he agreed to let YIM borrow the gun.

BRANK and YIM drove to WILLIAM's residence off La Jolla Boulevard and obtained the gun, a .357 caliber silver Python revolver with a wooden hand grip. WILLIAMS gave YIM the gun in his shooting range case, to include his eye/hearing protection and ammunition. YIM believed that WILLIAMS thought he was returning to the shooting range.

YIM drove BRANK to Los Angeles. On the way, they stopped to purchase aluminum foil. BRANK planned to wrap the money in aluminum foil so that the RFID chips in the $100 bills could not be tracked on the highway.

They first arrived at BRANK's apartment in the Koreatown area of Los Angeles. At this location, BRANK removed the gun and ammunition from the shooting range case and packed it into his backpack. BRANK did not load the gun, but kept the ammunition separate. BRANK and YIM discussed the plan for bringing the weapon. BRANK would pick up the money. He told YIM something to the effect of, "If anyone shoots me, get my back." YIM responded, "I got your back." They were not afraid that cops would show up, but feared that DON LNU may coordinate a hit on them. YIM agreed to back up BRANK, but he had no intention of utilizing the weapon. BRANK expected YIM to use the gun if necessary. According to YIM, BRANK had reemphasized, "If anything happens, shoot at whoever shoots at me."

YIM and BRANK did not discuss YIM receiving a cut of the money. YIM thought that if he helped BRANK invest the money well, possibly in his own business or business ventures of his friends, YIM would receive a kickback.

While driving from BRANK's apartment to El Segundo, California, BRANK spoke over speaker phone with ███ LNU. ███ LNU seemed uncomfortable about not being in control. BRANK and ███ LNU were deliberating about the meeting spot. YIM told BRANK that ██ LNU sounded professional and that they should just go to the STARBUCKS in El Segundo as ███ LNU suggested.

Agents explained to YIM that his timeline and some details of his story were inconsistent and they believed he knew more. YIM stated that he had

FD-302a (Rev. 05-08-10)

known something wasn't clear and that BRANK had something on this person
█████LNU. YIM confessed that BRANK had told him that this was "blackmail"
during their ride up from San Diego. Agents reminded YIM that he had wanted
to cooperate and had promised to be truthful. YIM agreed, reemphasized his
desire to cooperate, and provided the following revised account of his
relationship and interactions with BRANK:

   YIM had been aware of the nefarious nature of BRANK's activity from the
day BRANK arrived in San Diego in the Audi R8. It was at this time that
BRANK told YIM that he had gotten the car by "blackmail." BRANK explained
to YIM that since he was very popular on TWITTER, he had threatened to post
something on TWITTER about ███ LNU. BRANK told YIM he had already posted on
his TWITTER account something to the effect of "Who knows someone named
████?"

   During their trip to Las Vegas, YIM had loaned BRANK a few hundred
dollars. BRANK had arranged to receive a wire transfer from ███ LNU, but
the transaction would not be complete until the following day. YIM loaned
BRANK the money and BRANK paid him back the following day after receiving
money from███ LNU.

   BRANK told YIM that he had received $500,000 from███ LNU. After
receiving the money, YIM had accompanied BRANK to a WELLS FARGO bank in La
Jolla, California. BRANK transferred $400,000 into a savings account and
inquired about a Euro currency credit card that would allow him to spend
money and make ATM withdrawals in Europe.

   BRANK also told YIM that ███ LNU would ship the vehicle title to the
Audi R8. BRANK had not received the vehicle title. YIM was aware of
negotiations between BRANK and ███LNU that involved payments of $5000 per
month over the next 5 to 10 years as an alternative to keeping the Audi R8.

   BRANK had arranged for the purchase of a BMW M3 and he was supposed to
pick up the vehicle the next day, March 5, 2015.

   Agents again informed YIM that they believed he was intentionally
omitting details about his involvement. YIM admitted that he had been
reluctant to provide details because he feared implicating himself. YIM
then advised that he was aware the drive to Los Angeles this night was
directly involved with the blackmail of ████LNU. YIM and BRANK drove YIM's
vehicle because the Audi R8 would be too high profile. They had also
specifically discussed taking a weapon with them to Los Angeles. They both
felt that if engaging in a cash transaction of this magnitude, it was
important to bring a weapon for protection. Upon further questioning, YIM
admitted he had been involved in the planning and execution to obtain money

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of ETIENNE KAALA YIM _____, On  03/04/2015 , Page  6 of 6

from ▇ LNU from the time BRANK first arrived in San Diego in the Audi R8
two weeks prior.

   YIM had bad memories of having testified in connection with the murder
of his mother in the past. Despite his reluctance, YIM stressed his desire
to cooperate and stated that he would be willing to testify against BRANK.
Lastly, YIM provided the mobile telephone number associated with the iPhone
discovered on BRANK at the time of his arrest, ▇▇▇▇▇▇▇

# EXHIBIT D

FD-302 (Rev. 5-8-10)

- 1 of 5 -



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    03/16/2015

On March 4, 2015, at approximately 8:40 pm, Teofil Brank, Date of Birth October 2, 1989, was arrested by Agents of the Federal Bureau of Investigation pursuant to probable cause he committed the crime of extortion. The arrest occurred in a parking lot associated with a Starbucks coffee shop, Jersey Mike's submarine shop, and Ralph's grocery store in El Segundo, CA. The address of the Starbucks coffee shop is 530 North Sepulveda Boulevard, El Segundo 90245.

The following Agents and Officers were present during the arrest:

Supervisory Special Agent (SSA) Joseph P. Brine

SA Jonathan H. Bauman

SA Richard Alexander

SA Frank Aimaro

SA Michael S. Winning

SA Cathrine Moore

SA Jeffery Bennett

Los Angeles Police Department (LAPD) Officer Dennis Bopp

LAPD Officer Carol Mosher

UC 

The following items were located on Brank during a search incident to his arrest and logged into evidence:

$416.76 in United States Currency (logged in evidence as 1B(8))

| | | |
|---|---|---|
| Investigation on | 03/04/2015 at El Segundo, CA, California, United States (In Person) | |
| File # | | Date drafted 03/11/2015 |
| by BAUMAN JONATHAN H | | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

███████

Continuation of FD-302 of Collection       Arrest of Teofil Brank, Detention of Etienne Yim and subsequent Evidence , On  03/04/2015 , Page  2 of 5

(1) "Rolex" watch (logged in evidence as 1B(7))

(1) Silver chain (logged in evidence as 1B(7))

(1) Silver ring (logged in evidence as 1B(7))

(1) Iphone 6 Plus cellular telephone (logged in evidence as 1B(5))

(1) Certificate of Title from the State of Florida in the name of ███████ contained a manilla envelope labeled "MR. TEOFIL BRANK OR COURIER" (logged in evidence as 1B(12))

Immediately following Brank's arrest, Special Agent (SA) Jonathan H. Bauman noticed an unknown male seated in the driver's seat of a dark colored Ford Focus parked in a row of spaces within close proximity of where Brank's arrest occurred. SA Bauman approached the unknown male in the vehicle and asked his purpose for being in the area. The unknown male initially stated something to the effect, I am just waiting in the area. Upon further questioning, the unknown male added something to the effect of, I am here to pick up my friend. In order to clarify the unknown male's purpose for remaining in the area during Brank's arrest, and for officer safety reasons, SA Bauman requested the unknown male exit his vehicle for additional questioning. The unknown male agreed to do so. After existing his vehicle, SA Bauman asked the unknown male for the location of the friend for whom he was waiting. The unknown male pointed toward the entrance of the Starbucks coffee shop. SA Bauman then asked the unknown male for the name of his friend. The unknown male stated "Teo." SA Bauman immediately detained the unknown male under suspicion he was associated with Teofil Brank. The unknown male subsequently confirmed he was waiting for Brank and identified himself as Etienne. His identity was confirmed when Agents located a California Driver License on his person containing his photograph, the name of Etienne Kaala Yim, ███████
███████

Following Yim's detention, Agents conducted a protective sweep of the passenger compartment of Yim's Ford Focus. After the protective sweep was completed, Supervisory Special Agent (SSA) Joseph P. Brine asked Yim for permission to search his vehicle. Yim consented to the search and also advised he would assist Agents in locating items in the vehicle belonging to Brank. SSA Brine escorted Yim to the vehicle. Yim identified a black High Sierra brand backpack and a Samsung brand cellular telephone, both laying in plain sight in the center console of the front passenger compartment of the vehicle, as belonging to Brank. SSA Brine observed a brown leather case sticking out of the top of the black High Sierra brand

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Arrest of Teofil Brank, Detention of Etienne Yim and subsequent Evidence Collection _____ , On  03/04/2015 , Page  3 of 5

backpack.  The case looked to SSA Brine to be a case commonly used to store firearms.  SSA Brine undid the zipper of the brown leather case and observed a firearm.  Subsequently, the Black High Sierra brand backpack, all of its contents, and the Samsung brand cellular telephone were seized as evidence.

Yim was compliant throughout the course of his detention and numerous times stated he would like to cooperate with law enforcement by allowing himself to be interviewed.  In order to conduct the interview of Yim, Agents transported Yim to the El Segundo Police Station.  Yim was transported by SA Jeffrey Bennett while SA Bauman followed in a separate vehicle from behind.

The Samsung brand cellular telephone was logged into evidence as 1B(6), and the black High Sierra brand backpack was logged into evidence as 1B(1).  SA Bauman conducted an inventory search of the black High Sierra brand backpack.  The backpack was logged into evidence as 1B(1).  The following items were located in the backpack and also placed into evidence:

(1) .357 Colt Python in a brown leather case, serial #K46715        (logged into evidence as 1B(11))

(6) Winchester .38 Special unexpended bullets in a black G-Shock watch brand container (logged into evidence as 1B(3))

(1) District of Columbia Temporary Driver's License for Teofil Brank number 3410205 (logged in evidence as 1B(1))

(1) bath scrubbing pad in a white box (logged in evidence as 1B(1))

(1) Urban Outfitters receipt (logged in evidence as 1B(1))

(2) CVS key fob swipe cards (logged in evidence as 1B(1))

(1) black and white striped $49.00 receipt (logged in evidence as 1B(1))

(1) Sewing kit (logged in evidence as 1B(1))

(1) Dr. Dre Beats brand charger (logged in evidence as 1B(1))

(1) USB charging cord (logged in evidence as 1B(1))

(1) AC charger (logged in evidence as 1B(1))

(1) portable battery charger (logged in evidence as 1B(1))

FD-302a (Rev. 05-08-10)

█████████████

Arrest of Teofil Brank, Detention of
Etienne Yim and subsequent Evidence
Continuation of FD-302 of Collection _____ , On  03/04/2015 , Page  4 of 5

(1) bottle of lotion (logged in evidence as 1B(1))

(1) ACE padlock with key (logged in evidence as 1B(1))

(1) red key (logged in evidence as 1B(1))

(8) "Magnum" brand condoms (logged in evidence as 1B(1))

(1) light blue USB/computer interface cord (logged in evidence as 1B(1))

(1) empty 4 pack pill container (logged in evidence as 1B(1))

(2) empty individual 1 pack pill containers (logged in evidence as 1B(1))

(1) set of Apple brand ear-buds (logged in evidence as 1B(1))

(1) Apple brand charger with attached cord (logged in evidence as 1B(1))

(2) Swisher Sweets brand cigarillos (logged in evidence as 1B(1))

(1) Medical Marijuana certification certificate in the name of Teofil Brank
(logged in evidence as 1B(1))

(1) clear plastic zip lock baggie labeled "Medical Cannabis" (logged in
evidence as 1B(9))

(1) blue and purple pipe containing an unknown burnt residue (logged in
evidence as 1B(9))

(1 red container labeled "Sharpstone" containing a green leafy substance
(logged in evidence as 1B(9))

(1) black wallet containing multiple miscellaneous business and retail
store discounts cards (logged in evidence as 1B(1))

(1) black Kyocera brand flip style cellular telephone (logged in evidence
as 1B(4))

(1) $1.76 (logged in evidence as 1B(8))

(1) black, silver, and blue electronic cigarette containing an unknown
liquid substance (logged in evidence as 1B(10))

    Photographs of the above evidence items are digitally attached to this
document in the 1A section.

FD-302a (Rev. 05-08-10)

▮▮▮▮▮▮▮▮▮▮

Arrest of Teofil Brank, Detention of
Etienne Yim and subsequent Evidence

Continuation of FD-302 of   Collection                                    , On   03/04/2015   , Page   5 of 5