STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
KIMBERLY JAIMEZ (Cal. State Bar No. 271235)
Assistant United States Attorney
VANESSA BAEHR-JONES (Cal. State Bar No. 281715)
Assistant United States Attorney
General Crimes Section
     1200/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0511\8911
     Facsimile: (213) 894-0141
     E-mail:   kimberly.jaimez@usdoj.gov
               Vanessa.Baehr-Jones@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 15-0131(A)-JFW |
|---|---|
| Plaintiff, | TRIAL MEMORANDUM |
| v. | Trial Date:  May 12, 2015<br>Time:        8:30 a.m. |
| TEOFIL BRANK, | Location:    Courtroom of the<br>             Hon. John F. Walter |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Vanessa Baehr-Jones

//

//

//

and Kimberly D. Jaimez, hereby submits its trial memorandum.

Dated: May 7, 2015              Respectfully submitted,

                                STEPHANIE YONEKURA
                                Acting United States Attorney

                                ROBERT E. DUGDALE
                                Assistant United States Attorney
                                Chief, Criminal Division


                                        /s/
                                ───────────────────────────────
                                VANESSA BAEHR-JONES
                                KIMBERLY D. JAIMEZ
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

2

**Table of Contents**

I.    STATUS OF THE CASE..............................................1

    A.   Procedural Background......................................1

    B.   Government's Case-in-Chief.................................1

    C.   Stipulations...............................................1

II.   ELEMENTS OF THE CHARGED OFFENSES................................2

        1.   18 U.S.C. § 875(d) (Count One)........................2

        2.   18 U.S.C. § 1951(a) (Counts Two and Five)............2

        3.   18 U.S.C. § 880 (Counts Three and Four)..............4

        4.   18 U.S.C. § 1952(a)(3) (Count Six)...................4

        5.   18 U.S.C. § 924(c) (Count Seven).....................4

        6.   Forfeiture Allegations...............................5

III.  STATEMENT OF FACTS..............................................5

IV.   EVIDENTIARY AND LEGAL ISSUES....................................7

    A.   Defendant's Unfounded, Self-Serving Allegations...........7

    B.   Recorded Conversations.....................................9

    C.   Expert and Related Evidence...............................11

        1.   Opinion Testimony of Government Agent...............12

    D.   Cross-Examination of Defendant............................13

    E.   Reciprocal Discovery......................................14

    F.   Affirmative Defense.......................................14

I.   **STATUS OF THE CASE**

   A.   **Procedural Background**

   Defendant Teofil Brank ("defendant") is charged in the First Superseding Indictment ("FSI") with transmitting threatening communications with the intent to extort, in violation of 18 U.S.C. § 875(d), extortion and attempted extortion affecting interstate commerce by nonviolent threat, in violation of 18 U.S.C. § 1951(a), receiving proceeds of extortion, in violation of 18 U.S.C. § 880, use of an interstate facility to facilitate an unlawful activity, in violation of 18 U.S.C. § 1952(a)(3), and possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

   B.   **Government's Case-in-Chief**

   The government estimates that it will call seven to eight witnesses in its case-in-chief, unless the parties reach agreement on stipulations that would eliminate the need for the government to call one of those witnesses. The government estimates that it will take no more than two days to present its case-in-chief (not including the time for jury selection). Should defendant offer witnesses in his defense, the government also may choose to call rebuttal witnesses.

   C.   **Stipulations**

   The government has proposed stipulating to the following facts to streamline the proof offered at trial:

   (1) A stipulation that the $500,000 wire transfer between Victim D.B.'s Goldman Sachs account and defendant's Wells Fargo account went between accounts located in different states.

## II. ELEMENTS OF THE CHARGED OFFENSES

### 1. 18 U.S.C. § 875(d) (Count One)

The elements of § 875(d) are: (1) defendant knowingly sent a communication in interstate commerce containing a true threat to damage the reputation of D.B.; and (2) defendant did so with the intent to extort money or something else of value. Eleventh Circuit Pattern Criminal Jury Instructions, C.18.30.4 (2010) (modified to reflect charge in this case); United States v. Coss, 677 F.3d 278 (6th Cir. 2012). There is no requirement that the sender and recipient were located in separate states at the time the message was sent and received for the communication to be sent in interstate commerce. In United States v. Sutcliffe, 505 F.3d 944 (9th Cir. 2007), the defendant posted threats on a website. The Ninth Circuit held that evidence that, during the relevant time period, the website was uploaded to various servers located in Louisiana, North Carolina, and Virginia satisfied the jurisdictional element of 18 U.S.C. § 875(c).

Moreover, here, many of the threats occurred over text message. This form of communication is sufficient to satisfy the jurisdictional requirement. See United States v. Kammersell, 196 F.3d 1137, 1138-39 (10th Cir. 1999) (holding that threat sent by instant message over interstate telephone lines "falls within the literal scope of [§ 875(c)] and gives rise to federal jurisdiction").

### 2. 18 U.S.C. § 1951(a) (Counts Two and Five)

The elements of § 1951(a), Hobbs Act — Extortion or Attempted Extortion by Nonviolent Threat, are: (1) the defendant induced D.B. to part with property by wrongful threat of reputational harm; (2) the defendant acted with the intent to obtain property; and

(3) commerce from one state to another was affected in some way. Ninth Circuit Model Criminal Jury Instructions, No. 8.142A (modified to reflect charge in this case).  In Count Five, the government has alleged attempted extortion, which has the following additional element: the defendant did something that was a substantial step toward committing the crime.  For purposes of showing the effect on interstate commerce, interstate commerce includes the movement of goods, services, money and individuals between states.  These goods can be legal or illegal.  Only a minimal effect on commerce is required and the effect need only be probable or potential, not actual.  See Ninth Circuit Model Criminal Jury Instructions, No. 8.152 (relevant portion only); 18 U.S.C. § 1951(b)(3).

    Defendant is not entitled to a "claim of right defense."  An instruction on this defense is only applicable if the threat is not inherently wrongful.  See United States v. Villalobos, 748 F.3d 953 (9th Cir. 2014).  If a nonviolent threat is to be carried out by unlawful means, then the Hobbs Act's "wrongful" requirement is satisfied, regardless of whether the defendant had a lawful claim of right to the property demanded.  Id. at 957-58.

    Here, defendant threatened to disclose embarrassing, sensitive information of a sexual nature about the Victim D.B. on defendant's Twitter account (which has several thousand followers) if D.B. refused to comply with defendant's demands.  Such a threat is always wrongful, regardless of whether defendant actually or reasonably believed that he was entitled to the money.  In the context of a reputational threat, if there is no nexus between the reported injury (i.e. the broadcasted, harmful information about the victim), and the act the defendant was allegedly seeking compensation for, then the

3

use of the threat to attempt to regain the property or proceeds is inherently wrongful, and no claim of right defense applies.

### 3. 18 U.S.C. § 880 (Counts Three and Four)

Receiving proceed/property of extortion in violation of § 880 has the following elements: (1) defendant received, possessed, concealed, or disposed of money or other property; (2) the property was obtained from the commission of the offense charged in count one, namely, transmitting threatening communications with intent to extort; (3) the offense is punishable by imprisonment for more than one year; and (4) defendant knew the money or other property had been unlawfully obtained. See 18 U.S.C. § 880.

### 4. 18 U.S.C. § 1952(a)(3) (Count Six)

The elements of § 1952(a)(3) are: (1) the defendant used a facility of interstate or foreign commerce, namely a cellular telephone, with the intent to promote, manage, establish, or carry on, or facilitate the promotion, management, establishment, or carrying on of an unlawful activity, namely, extortion offenses in violation of the laws of the State of California and of the United States; (2) after doing so the defendant attempted to perform acts to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, and carrying on of, the extortion; and (3) the defendant did something that was a substantial step toward committing the crime. Ninth Circuit Model Criminal Jury Instructions, No. 8.144 (modified to reflect charge in this case).

### 5. 18 U.S.C. § 924(c) (Count Seven)

The elements of § 924(c) are: (1) the defendant committed the crime of attempted extortion as charged in Count Five of the indictment, which is a crime of violence; and (2) the defendant

4

knowingly carried the Colt revolver during and in relation to that crime. Ninth Circuit Model Criminal Jury Instructions, No. 8.71 (modified to reflect the charge in this case).

### 6. Forfeiture Allegations

At the end of the FSI, the government also notified defendant pursuant to Rule 32.2(c) of the Federal Rules of Criminal Procedure that it seeks forfeiture of property in the event he is convicted of violating 18 U.S.C. § 875(d) or 18 U.S.C. § 1951(a) as charged in Counts One and Two of the FSI ("the forfeiture allegation"). The forfeiture allegation seeks forfeiture of any property which constitutes or is derived from proceeds traceable to the offenses charged in Counts One and Two.

## III. STATEMENT OF FACTS

At trial, the United States intends to prove the following facts, among others:

On February 16, 2015, defendant threatened to disclose embarrassing, sensitive information of a sexual nature about the Victim on defendant's Twitter account (which has several thousand followers) if the Victim refused to comply with defendant's demands. Initially, defendant demanded, over text messages, cash payments and defendant's Audi R8, valued at $180,000. In an attempt to appease defendant and protect his reputation, the Victim ultimately wired defendant $500,000 and turned over to defendant his car. Still unsatisfied, defendant made additional demands, including additional cash payments and title to the Audi. As the extortion escalated, on March 3, 2015, the Victim contacted the Federal Bureau of Investigation ("FBI") and requested their assistance.

On March 4, 2015, defendant instructed the Victim in a text message to meet at the Grove shopping mall to turn over an additional $1,000,000 in cash and the title for the Audi. At the direction of the FBI, the Victim requested a different meeting location, a Starbucks in El Segundo, and told defendant that his "trusted friend," who was actually an FBI agent acting undercover, would make the delivery on his behalf.

In preparation for the meeting, defendant and Etienne Yim ("Yim") obtained a gun from Benjamin Williams ("Williams"), specifically a .357 caliber, Colt Python revolver. According to Williams, Yim and a friend, whom Williams did not know, but whom he described in a manner that matches the physical description of defendant, arrived at his house in San Diego at approximately 2:00 p.m. on March 4, 2015. Yim, who had previously borrowed Williams' gun and ammunition to go to a firing range, asked Williams to lend him the weapon.

After leaving William's residence on March 4, 2015, defendant and Yim travelled back to Los Angeles. During the trip, defendant called the Victim and threatened him, saying that if anything went wrong, defendant had backup. Specifically, he told the victim in a recorded call, "Look, I'm not coming alone too, I'm, if I'm coming I have others that are known that if anything happens, if anything happens, they have all that I need . . . for anything else . . . ." Just as defendant had threatened in the call, Yim drove defendant to the meet location and waited outside the Starbucks — with the gun stashed in defendant's backpack — while defendant went in to retrieve the proceeds of the extortion.

The government will prove these facts through the following evidence: (1) text messages found on the cellular telephones of Victim and defendant, as well as testimony from a law enforcement agent about the extraction of evidence from defendant's phone; (2) testimony of the Victim; (3) testimony from the undercover FBI agent who participated in the March 4, 2015, meet; (4) video recording of the March 4, 2015, attempted extortion; (5) audio recordings of the call between defendant and the Victim on March 4, 2015; (6) testimony from Yim and Williams about how defendant obtained the firearm; (7) testimony from the FBI agent who found the Audi r8; (8) certified public records showing the make, model, serial number, and registration information for the firearm; (9) business records showing the $500,000 wire transfer between the Victim's account and the defendant's account; (10) defendant's emailed apology to the Victim; and (11) photographs of relevant locations and items of evidence.  The government reserves the right to present more or different evidence depending on the circumstances of trial.

**IV. EVIDENTIARY AND LEGAL ISSUES**

**A.    Defendant's Unfounded, Self-Serving Allegations**

Defendant has made several allegations about Victim, namely, that the Victim raped him and has solicited sex with minors.  To date, the government has found <u>no</u> evidence supporting either of these allegations, and has moved to exclude defendant's rape allegation.

While a defendant has a constitutional right to confront witnesses against him, <u>see</u> <u>Davis v. Alaska</u>, 415 U.S. 308, 315 (1974), the Court has the authority to limit the scope of cross-examination, <u>see</u> Fed. R. Evid. 611 ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting

7

evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."). Where evidence fails to touch on a witness's ability to be truthful, to recall events, or to show a bias, the Court should exclude it. United States v. Mohamed, 410 F. Supp. 2d 913, 916-17 (S.D. Cal. 2005). If the evidence is relevant to show lack of truthfulness or bias, the Court should still exclude it if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id. (citing Fed. R. Evid. 403).

Here, not only has the government found no evidence supporting defendant's allegations, but the allegations themselves have nothing to do with the Victim's ability to be truthful, his ability to perceive or recall events, or any bias he might have. Such allegations also bear no relevance to the events at issue here, namely, whether defendant extorted and attempted extort the Victim. As such, the Court should exclude all of it as both irrelevant and unfairly prejudicial.

Where a line of questioning is not probative of a witness's credibility and would harass the witness, the court must exclude it to protect the witness from harassment or undue embarrassment. United States v. Belloc, 917 F.2d 1307, 1309 (9th Cir. 1990) (excluding cross-examination of cooperating witness about allegedly beating his son and wanting to have his son born in Mexico so the witness could purchase property and grow marijuana there). Here, asking the Victim about defendant's unfounded allegations is wholly

8

irrelevant and, as in <u>Belloc</u>, should be excluded to prevent harassment of the victim.

Moreover, the facts here can be analogized to those in cases where Federal Rule of Evidence 412 protects a victim from "evidence offered to prove the victim engaged in other sexual behavior, or . . . to prove a victim's sexual predisposition." Fed. R. Evid. 412(a). Rule 412 limits cross-examination of a victim in a case alleging sexual misconduct and was intended "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact-finding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." Fed. R. Evid. 412, Advisory Committee Notes (1994). The same rationale applies to victims of extortion: a victim should not be subject to allegations thrown out in the public forum of trial simply because he has come forward to report threats of reputational harm. To allow for such self-serving, unfounded allegations to be admitted without limit during cross-examination would accomplish the very harm 18 U.S.C. § 1951(a) was meant to protect against and would discourage victims from reporting.

**B.   Recorded Conversations**

At trial, the government expects to introduce one audio recording between the Victim and defendant, along with a transcript of the recording, and one video recording of the undercover meet with defendant, along with the transcript. Each recording and transcript has been produced to the defense and has been placed onto compact

9

discs, which the government will offer as exhibits at trial. The conversations captured by the recordings occurred entirely in English.[1] Per the Court's trial order, the government has produced final transcripts for the recordings to defense counsel. Transcript books will be prepared for the Court and jury.

All duly admitted recorded conversations must be played in open court.[2] The foundation that must be laid for the introduction into evidence of recorded conversations is a matter largely within the discretion of the trial court. There is no rigid set of foundational requirements. Rather, the Ninth Circuit has held that recordings are sufficiently authenticated under Federal Rule of Evidence 901(a) if sufficient proof has been introduced "so that a reasonable juror could find in favor of authenticity or identification," which can be done by "proving a connection between the evidence and the party against whom the evidence is admitted" and can be done by both direct and circumstantial evidence. United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995), modified by 98 F.3d 1100 (9th Cir. 1996).

Witnesses may testify competently as to the identification of a voice on a recording. A witness's opinion testimony in this regard may be based upon his having heard the voice on another occasion

---

[1] For recorded conversations in the English language, the recording itself is the evidence, and a transcript of the recording may be provided as an aid in following the conversation. United States v. Chen, 754 F.2d 817, 824 (9th Cir. 1985); United States v. Phillips, 577 F.2d 495, 501-02 (9th Cir. 1978).

[2] Allowing jurors to take into the jury deliberation room recorded conversations that were not played in open court is structural error requiring automatic reversal if a defendant objects to allowing the jurors to have the un-played recordings in the jury room. United States v. Noushfar, 78 F.3d 1442, 1444-45 (9th Cir. 1996).

under circumstances connecting it with the alleged speaker.  Fed. R. Evid. 901(b)(5); United States v. Torres, 908 F.2d 1417, 1425 (9th Cir. 1990) ("Testimony of voice recognition constitutes sufficient authentication.").  In this case, the government expects that the Victim will authenticate the recorded call between himself and defendant because he was part of the call, and recognizes the voices on the call.  The video recording will be authenticated by the undercover agent.

### C. Expert and Related Evidence

The government has provided notice to defendant, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), that it intends to call as a witness Scott Saul, a Computer Forensic Examiner with the FBI.  Mr. Saul is the computer forensic examiner who processed the seized digital device in this investigation.  He is expected to testify about the contents of the digital device generally and his method of examining the phone.  Mr. Saul will testify about the extraction process he employed.  He will also generally discuss write blocking, retrieving deleted messages, wiping a device, and hash values, and will explain the significance of these to this case.  He will also testify that the exhibits retrieved from the phone, which were provided to you in discovery and will be further specified to you before trial, were obtained from the smartphone.  He will discuss various terms relating to smartphone forensics, including digital files, file path location, dates of creation, modification, and access, backup techniques, and the process of searching digital devices and extracting files.

The government does not believe that the above testimony constitutes expert testimony, but has nevertheless provided notice to defendant.

### 1. Opinion Testimony of Government Agent

An experienced government agent may provide opinion testimony even if that opinion is based in part on information from other agents familiar with the issue. United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987); United States v. Golden, 532 F.2d 1244, 1248 (9th Cir. 1976). An experienced government agent may testify as to his opinions and impressions of what he observed. As the court in United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982), stated:

> Opinions of non-experts may be admitted where the facts could not otherwise be adequately presented or described to the jury in such a way as to enable the jury to form an opinion or reach an intelligent conclusion. If it is impossible or difficult to reproduce the data observed by the witnesses, or the facts are difficult of explanation, or complex, or are of a combination of circumstances and appearances which cannot be adequately described and presented with the force and clearness as they appeared to the witness, the witness may state his impressions and opinions based upon what he observed.

Ultimately, opinion testimony by non-experts is "a means of conveying to the jury what the witness has seen or heard." Id.

Courts have admitted opinion testimony by law enforcement agents on a number of issues, such as (1) the modus operandi of drug traffickers, United States v. Espinosa, 827 F.2d 604, 612 (9th Cir. 1987) (holding that district court properly admitted law enforcement officer's expert testimony expert on the modus operandi of narcotics traffickers, including use of "stash pads" for drugs); (2) the use of guns by drug traffickers, United States v. Perez, 116 F.3d 840, 848 (9th Cir. 1997); and (3) a defendant's apparent attempt to avoid surveillance, Andersson, 813 F.2d at 1458. An experienced narcotics

agent's opinion testimony may be based in part on information from other agents familiar with the issue. United States v. Beltran-Rios, 878 F.2d 1208, 1213 n.3 (9th Cir. 1989).

Further, under Ninth Circuit law, opinion testimony by law enforcement officers is not necessarily expert testimony within the meaning of Rule 16(a)(1)(G). In United States v. VonWillie, 59 F.3d 922 (9th Cir. 1995), for instance, the Ninth Circuit held that the district court properly admitted testimony by a law enforcement agent that drug traffickers commonly used weapons "to protect their drugs and to intimidate buyers" as lay testimony. Id. at 929.

**D.   Cross-Examination of Defendant**

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony. See, e.g., Ohler v. United States, 529 U.S. 753, 759 (2000) (citing McGautha v. California, 402 U.S. 183, 215 (1971), vacated in part on other grounds, 408 U.S. 941 (1972) ("It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination")). A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence. United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981). The scope of a defendant's waiver is co-extensive with the scope of relevant cross-examination. United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver.

Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.").

### E.  Reciprocal Discovery

Despite the government's requests, defendant has not produced any reciprocal discovery to the government other than the video recordings obtained from the Starbucks parking lot, nor has defense provided any expert notice.  Accordingly, to the extent that there exists reciprocal discovery to which the government is entitled under Federal Rules of Criminal Procedure 12.1, 12.2, 16(b), or 26.2 that defendant has not produced, the government reserves the right to seek to have such materials excluded at trial.  See United States v. Young, 248 F.3d 260, 269-70 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape evidence defendant did not produce in pretrial discovery where defendant sought to introduce audiotape on cross-examination of government witness not for impeachment purposes, but as substantive "evidence in chief" that someone else committed the crime).

### F.  Affirmative Defense

As discussed above, defendant is not entitled to an affirmative defense based on a claim that he believed the extorted property/proceeds lawfully belonged to him.  Defendant's threats to disclose embarrassing, sensitive information of a sexual nature about the Victim D.B. on defendant's Twitter account the Victim were inherently wrongful, regardless of whether defendant actually or reasonably believed that he was entitled to the money.  In this

context, a claim of right defendant is not proper.  See <u>United States v. Villalobos</u>, 748 F.3d 953 (9th Cir. 2014).

Dated: May 7, 2015              Respectfully submitted,

                                STEPHANIE YONEKURA
                                Acting United States Attorney

                                ROBERT E. DUGDALE
                                Assistant United States Attorney
                                Chief, Criminal Division


                                       /s/
                                ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                                VANESSA BAEHR-JONES
                                KIMBERLY D. JAIMEZ
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA