HILARY POTASHNER (Bar No. 167060)
Acting Federal Public Defender
Seema Ahmad (Bar No. 270992)
(E-Mail: Seema_Ahmad@fd.org)
Ashfaq G. Chowdhury (Bar No. 243763)
(E-Mail: Ron_Chowdhury@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
TEOFIL BRANK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>       v.<br><br>TEOFIL BRANK,<br><br>            Defendant. | Case No. CR 15-00131-JFW<br><br>**DEFENDANT'S OPPOSITION TO JOINT MOTION FOR ORDER QUASHING SUBPOENA SERVED ON VICTIM'S COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF COUNSEL; EXHIBITS**<br><br>**Hearing Date: June 18, 2015**<br>**Hearing Time: 9 a.m.** |

   Defendant Teofil Brank, by and through his counsel of record, Deputy Federal Public Defenders Seema Ahmad and Ashfaq G. Chowdhury, hereby files this Opposition to the Joint Motion for an Order Quashing Subpoena Served on Victim's Counsel.

//

//

//

//

This Opposition is based upon the attached memorandum of points and authorities, declaration of counsel, exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Respectfully submitted,

HILARY POTASHNER
Acting Federal Public Defender

DATED: June 15, 2015          By  /s/ Seema Ahmad
                              SEEMA AHMAD
                              ASHFAQ G. CHOWDHURY
                              Deputy Federal Public Defenders

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

On May 4, 2015, the defense served Douglas Axel, attorney for alleged victim D.B., with a subpoena to testify at Mr. Brank's trial. The defense contends that Mr. Axel made himself a witness in this case when, on March 3, 2015, he made statements central to Mr. Brank's defense ("Axel statement") to federal agents while *outside* the presence of his client. On June 11, 2015, counsel for D.B. filed a motion to quash the subpoena. (Dkt. 174.) D.B.'s counsel bases its motion on three failed arguments: first, that there are no inconsistent statements between D.B.'s interviews with law enforcement and the Axel statement; second, that D.B. cannot be impeached using the Axel statement; and third, federal agents present at the Axel statement can be used to elicit statements that impeach D.B. and that were made by Mr. Axel. For the following reasons, each argument fails and Mr. Axel should be required to appear for testimony at Mr. Brank's trial in accordance with Mr. Brank's Sixth Amendment right to compel witnesses in his defense.

## II.

## THE AXEL STATEMENT

On March 3, 2015, Mr. Axel was interviewed by FBI agents outside the presence of his client and made, *inter alia*, statements concerning the following[1]:

- That D.B. and Mr. Brank were first introduced through a paid escort used by D.B.;

---

[1] *See* March 3, 2015 FBI-302 of Interview of Douglas Axel, attached as Exhibit A ("Axel statement").

1

- The number of sexual liasions between D.B. and Mr. Brank in 2014 and whether they were paid or unpaid;
- "Referral fees" D.B. would pay to Mr. Brank to arrange sexual liasions with others;
- The amount of the referral fees and information about how they were typically paid in cash but also through wire services such as Square and Western Union;
- The nature of the relationship between D.B. and Mr. Brank including how D.B. would offer advice to Mr. Brank and suggested a career change to male modeling;
- D.B.'s business interest in the homosexual pornography industry;
- The location of a 2013 sexual liaison between D.B., Mr. Brank, and Miles LNU;
- The last time D.B. and Mr. Brank saw each other in person; and
- Alleged extortionate threats made by Mr. Brank.

## III.
## ARGUMENT

Each of the arguments raised by D.B.'s counsel is either factually unsound, irrelevant to the issuance of the subpoena, or does not support the argument that the subpoena should be quashed. As discussed below, the subpoena should stand and Mr. Axel should be required to testify at trial, if called by the defense as a witness.

**1.  D.B.'s Counsel Mistakenly Focuses On Whether The Axel Statement is Inconsistent with D.B.'s Statements**

As an initial matter, D.B.'s counsel misunderstands the purpose of the subpoena by fixating on the claim that the Axel statement does not contain assertions that are inconsistent with those made by D.B. *See* Motion to Quash at 1. The Axel statement need not be inconsistent with D.B.'s past statements for purposes of Mr. Axel's

2

1 testimony at trial. Rather, Mr. Axel will only be called to impeach D.B. if D.B. makes
2 statements *at trial* that are inconsistent with the Axel statement.

3       For example, the Axel statement states that D.B. had sex with Mr. Brank "on
4 approximately four or five separate occasions during 2014." *See* Axel statement at
5 Bates 1113. D.B., on the other hand, made a more vague statement in which he said he
6 "met with Brank on multiple occasions" and "paid for sexual contact".[2] D.B. did not
7 offer a time frame for the sexual contact or the number of incidents. If, at trial, D.B.
8 testifies that he did not have sexual relations with Mr. Brank in 2014, the defense
9 would seek to call Mr. Axel to impeach D.B. As discussed below, eliciting this
10 testimony is well within Mr. Brank's Sixth Amendment rights and has nothing to do
11 with harassing the alleged victim or his counsel.

12       The Axel statement also contains information about the nature of the relationship
13 between Mr. Brank and D.B. Mr. Axel stated that D.B. and Mr. Brank developed a
14 "friendship" and that D.B. "mentored" Mr. Brank. *See* Axel statement at Bates 1114.
15 There are no such representations in the FBI-302 of the March 3, 2015 interview with
16 D.B. Therefore, such information would only be elicited at trial if Mr. Axel was called
17 as a witness and if D.B. denied any such relationship with Mr. Brank.

18       D.B.'s counsel's claim that "the Victim has not testified, so there is no testimony
19 to impeach" is off-point and irrelevant. *See* Motion to Quash at 4. Moreover, it has no
20 bearing on the appropriateness of the subpoena at issue. Such an argument willfully
21 ignores that Mr. Brank has also subpoenaed D.B. to testify.

22       **2.    Mr. Axel Voluntarily Made Himself A Witness In This Case And
23           His Testimony Can Be Properly Used to Impeach D.B. At Trial**

24       In *United States v. Miller*, 874 F.2d 1255, 1270 (9th Cir. 1989), the Ninth Circuit
25 considered the use of an attorney proffer at sidebar as impeachment evidence against

---

[2] *See* March 3, 2015 FBI-302 of Interview of D.B., attached as Exhibit B.

3

the attorney's client. In *Miller*, the witness-client testified that Miller had never passed her documents. *Id.* The government cross-examined the witness based on prior statements made by her attorney at a sidebar during her guilty plea *Id.* During that sidebar, the attorney stated that his client had indeed received documents from Miller. *Id.* Miller argued that the sidebar statement by the attorney could not be considered to be the witness's statement. *Id.* The court found, as is the case here, that the witness-client had authorized her attorney to make the proffer and that it could be properly used as impeachment evidence. *Id.* at 1271. Here, D.B. retained and authorized Mr. Axel to make statements to the government that are based on D.B.'s own statements to his counsel. These statements are not protected by the attorney-client privilege[3] and, as in *Miller*, constitute appropriate impeachment evidence.

D.B.'s counsel cites a single, district court case from Connecticut for the proposition that, under Fed. R. Evid. 613, the statements of an attorney cannot be used as the prior inconsistent statements of the attorney's client. *See* Motion to Quash at 4. However, in the cited case, *United States v. Cuevas Pimentel*, 815 F. Supp. 81, 82 (D. Conn. 1993), the defendant sought to impeach a co-defendant-turned-government-witness by using statements made by the co-defendant's attorney during a detention hearing. This factual scenario is not at all similar to the situation at hand. Here, Mr. Axel, of his own accord, interviewed with the FBI outside the presence of his client and provided information central to Mr. Brank's defense. Any resulting threat to the attorney-client relationship is of Mr. Axel's own making. By contrast, the attorney in *Cuevas Pimentel* was performing legal duties squarely within the role of a defense attorney. He did not make himself a witness to a criminal prosecution by voluntarily

---

[3] D.B.'s counsel does not argue that there is any privilege applicable to the Axel statement. *See* Motion to Quash at 3.

4

1  interviewing with law enforcement outside the presence of his client, as is the case
2  here.
3       Furthermore, another district court that considered the *Cuevas Pimentel* case held
4  that Rule 613 "does not prohibit the impeachment of [a witness] with [the attorney's]
5  statements…" *Reaves v. Pennsylvania State Police*, No. 1:09-CV-2549, 2013 WL
6  5411952, at *2 (M.D. Pa. Sept. 26, 2013). In *Reaves*, the plaintiff brought a
7  discrimination claim against the Pennsylvania State Police ("PSP") and sought to use
8  PSP's attorney's statements to contradict a PSP witness. *Id.* The court found that the
9  evidence was appropriate "impeachment by contradiction" evidence. *Id.*
10      In the present case, D.B.'s counsel conferred numerous times with defense
11 counsel concerning the subpoena at issue. During those conversations, D.B.'s counsel
12 referred to D.B. as a "near-party" to the present criminal prosecution and suggested that
13 as a party to this case, the subpoena directed at an attorney was improper. *See* attached
14 Declaration of Seema Ahmad. That claim is squarely contradicted by case law that
15 allows an attorney's statement to be used against the attorney's client as a party-
16 admission. Under the Fed. R. Evid. 801 party-admission exception to hearsay, well-
17 established case law supports the proposition that an attorney's statement can be used
18 against the attorney's client. *See, e.g.*, *United States v. Flores*, 679 F.2d 173, 177 (9th
19 Cir. 1982) (permitting the government to introduce into evidence an incriminating letter
20 written by defendant's attorney); *U.S. v. Valencia*, 826 F.2d 169, 172 (2d. Cir. 1987)
21 ("This Court has recognized that '[s]tatements made by an attorney concerning a matter
22 within his employment *may* be admissible against the party retaining the attorney.'"
23 (internal quotation omitted)).
24 //
25 //
26 //
27 //
28

5

### 3. Mr. Brank Is Not Required to Impeach D.B. Through The Agents That Were Present During the Axel Statement Nor Do Those Agents Have First-Hand Knowledge of D.B.'s Prior Statements

It is peculiar that D.B.'s counsel suggests that the agents present at the Axel statement can provide the same testimony that would be elicited from Mr. Axel. Mr. Axel is the witness with personal, first-hand knowledge of the information he provided to law enforcement that was given to him by his client, D.B. In exercising his Sixth Amendment right to compulsory process, Mr. Brank is not required to forego the use of a witness with first-hand knowledge.

D.B.'s counsel argues that under *United States v. Bergeson*, 425 F.3d 1221 (9th Cir. 2005), use of the FBI agents as witnesses instead of Mr. Axel is a ground for quashing the subpoena. In *Bergeson,* however, the issue was an attorney being called to testify before the *grand jury* and provide information that would subject her own client to criminal prosecution. *Id.* at 1222. Not only does this involve a much greater threat to the attorney-client relationship than is present here, the Court in *Bergeson* quashed the subpoena in part because the information the prosecutor sought to elicit from the attorney was *the exact information* that could be sought from using defendant's mother as a witness. *Id.* at 1226. There is nothing in *Bergeson* to suggest that the subpoena at issue here should be quashed. The FBI agents never received the information contained in the Axel statement directly from D.B. Only Mr. Axel has that direct link to the information he provided which makes him an appropriate impeachment witness.

//
//
//
//
//

6

# IV.
# CONCLUSION

For the foregoing reasons, the joint motion to quash filed by D.B. and his counsel should be denied. Mr. Brank should be permitted to call Mr. Axel as a witness, if necessary, as guaranteed by the Sixth Amendment.

Respectfully submitted,

HILARY POTASHNER
Acting Federal Public Defender

DATED: June 15, 2015        By  */s/ Seema Ahmad*
                                SEEMA AHMAD
                                ASHFAQ G. CHOWDHURY
                                Deputy Federal Public Defenders

7

# **DECLARATION OF SEEMA AHMAD**

I, Seema Ahmad, hereby state and declare as follows:

1. I have been appointed as counsel to represent Mr. Brank in the above-titled matter. Trial in this matter is scheduled for July 7, 2015.

2. On May 4, 2015, I directed an investigator from my office to serve a subpoena on Mr. Douglas Axel, counsel for D.B. The subpoena compels Mr. Axel to appear as a witness to testify at Mr. Brank's trial.

3. During the month of May, myself and my co-counsel, Ashfaq G. Chowdhury, met and conferred with counsel for D.B. regarding the subpoena. We communicated via email and teleconference on several occassions.

4. D.B.'s counsel repeatedly asserted that D.B. is a "near-party" to the prosecution of Mr. Brank. Moreover, counsel stated their belief that as a party to this matter, it would be improper to subpoena D.B.'s attorney to testify.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 15, 2015, at Los Angeles, California.

*/s/ Seema Ahmad*
SEEMA AHMAD
Deputy Federal Public Defender

8