**DOCKET 184**

# EXHIBIT A

FD-302 (Rev. 5-8-10)

- 1 of 3 -



## FEDERAL BUREAU OF INVESTIGATION

Date of entry  03/11/2015

    DOUGLAS AXEL, Attorney with SIDLEY AUSTIN LLP, work address 555 West Fifth Street, Suite 4000, Los Angeles, California 90013, ▓▓▓▓▓▓ was interviewed at the FEDERAL BUREAU OF INVESTIGATION (FBI), 11000 Wilshire Boulevard, Los Angeles, California 90024. AXEL had notified the FBI that he had information regarding extortion of his client, D▓▓▓ B▓▓▓. Also present for the interview was a private investigator hired by ▓▓▓▓ named JAMES NAUWENS with NARDELLO & CO. LLC, work address 565 Fifth Avenue, New York, New York 10017, w▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and Supervisory Special Agent (SSA) JOSEPH BRINE of the FBI. After being advised of the identity of the interviewing Agents and the nature of the interview, AXEL provided the following information:

    B▓▓▓ had acquired significant wealth through the sale of a telecommunications company. B▓▓▓ maintained residences in Palm Beach, Florida, La Jolla, California, and Nantucket, Massachusetts. Sometime during 2013, B▓▓▓ had ended an 18 year relationship.

    Following the termination of this relationship, B▓▓▓ had considered investing in a start-up homosexual pornography venture he had planned to name ARGO MEDIA. B▓▓▓ became involved with paid escorts and sexual liaisons with members of the homosexual pornography community. B▓▓▓ had initially met the subject, TEOFIL BRANK, through an individual named MILES LNU, an employee of CODY MEDIA, an adult content provider based out of San Diego, California.

    Sometime in 2013, B▓▓▓ stayed with MILES and BRANK at a La Jolla, California hotel and paid them for sexual relations. B▓▓▓ continued to have sexual liaisons with BRANK on approximately four to five separate occasions during 2014. B▓▓▓ paid for three of these sexual interactions and one interaction was unpaid. In addition, BRANK arranged sexual

| Investigation on | 03/03/2015 | at | Los Angeles, California, United States (In Person) |
|---|---|---|---|

| File # | ▓▓▓▓▓▓▓▓▓▓ | Date drafted | 03/09/2015 |
|---|---|---|---|

by  MICHAEL S WINNING , AGUIRRE JR JAIME

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of DOUGLAS AXEL - Attorney for ▮▮▮ B▮▮▮ , On 03/03/2015 , Page 2 of 3

interactions with other males for which B▮▮▮ paid BRANK referral fees of approximately $1500 to $2000. These payments for most often made in cash, but occasionally money was transferred utilizing transfer services such as SQUARE or WESTERN UNION.

Over the course of these paid sexual interactions, B▮▮▮ and BRANK developed a friendship. BRANK would often solicit advice from B▮▮▮ and B▮▮▮ would offer guidance. On one occasion, BRANK suggested that he wanted to "beat up" his roommate in Washington, DC. B▮▮▮ had advised against taking such action. B▮▮▮ also mentored BRANK and suggested a career change from homosexual pornography to male modeling. The last time B▮▮▮ saw BRANK in person was late in 2014.

In February of 2015, a series of telephonic texts were exchanged between BRANK and B▮▮▮. These texts escalated into threats by BRANK to expose or embellish on past conduct of B▮▮▮ in order to damage his reputation. It was understood that this exposure would occur over the TWITTER and/or INSTAGRAM accounts BRANK utilizes under his homosexual pornography persona JAREK WENTWORTH. These social media accounts have approximately 10,000 followers. BRANK had made a post to his TWITTER account saying something to the effect of "Hey, do any pornstars know a guy named D▮▮?"

Text exchanges between BRANK and B▮▮▮ continued through late February 2015 and early March 2015. At the time of these texts, B▮▮▮ was away on business in Vancouver, Washington, but BRANK believed B▮▮▮ to be in the Los Angeles area. In addition to the threats to harm B▮▮▮' reputation, BRANK also made what were interpreted as threats to violence such as "If I'm cornered I bite hard" and "I'm feeling evil."

These text exchanges eventually led to demands by BRANK. BRANK initially demanded $250,000 and an Audi R8 automobile owned by B▮▮▮. The demand was later raised to $500,000 and the Audi R8. B▮▮▮ wired BRANK $500,000 around the time of the President's Day holiday in February of 2015. BRANK also arranged through text messages the pickup of the Audi R8 from B▮▮▮' residence in La Jolla, California.

Along with the above information, AXEL provided the following documentary support:

- Text message exchanges between B▮▮▮ and BRANK between the dates of 2/16/2015 and 2/28/2015. These messages were extracted from B▮▮▮' iPhone mobile telephone, ▮▮▮▮▮▮▮, by STROZ FRIEDBERG LLC.

- Call logs of voice call exchanges between B▮▮▮ and BRANK between the dates of 10/4/2014 and 2/23/2015. These call logs were extracted from

US v. Brank, 15-131 Bates No1114

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of DOUGLAS AXEL - Attorney for D█████ B█████ , On 03/03/2015 , Page 3 of 3

B███' iPhone mobile telephone, ████████████, by STROZ FRIEDBERG LLC.

- Text message exchanges between B███ and JUSTIN GRIGGS between the dates of 3/1/2015 and 3/2/2015. These messages were extracted from B████' iPhone mobile telephone, ████████████, by STROZ FRIEDBERG LLC. (AXEL stated relationship with GRIGGS would be explained by B███.)

- Call logs of voice call exchanges between B███ and GRIGGS between the dates of 10/20/2014 and 3/1/2015. These call logs were extracted from B███' iPhone mobile telephone, ████████████, by STROZ FRIEDBERG LLC.

- Voicemail log of voicemail from GRIGGS on 2/28/2015. This voicemail log was extracted from B███'s iPhone mobile telephone, ████████████, by STROZ FRIEDBERG LLC.

- A GOLDMAN SACHS transaction report for 2/17/2015 reflecting a $500,000 wire transfer from B███ to BRANK.

- Photographs of B████' Audi R8 vehicle title sent via text message from B███ to BRANK.

- A hotel receipt for THE NINES hotel, 525 SW Morrison, Portland, OR 97204 reflecting hotel stay by B███ from 2/15/2015 to 2/17/2015.

The above documentary support is digitally attached.

# DOCKET 184

# EXHIBIT B

FD-302 (Rev. 5-8-10)  - 1 of 5 -



## FEDERAL BUREAU OF INVESTIGATION

Date of entry    03/16/2015



Also present for the interview were B▮▮ attorney DOUGLAS AXEL, attorney with SIDLEY AUSTIN LLP, ▮▮▮ private investigator JAMES NAUWENS, Managing Director at NARDELLO & CO., work address ▮▮▮ Supervisory Special Agent (SSA) JOSEPH BRINE of the FBI. After being advised of the identity of the interviewing Agents and the nature of the interview, B▮▮ provided the following information:

B▮▮ met the subject, TEOFIL BRANK, approximately two years ago at the LA VALENCIA HOTEL, address 1132 Prospect Street, La Jolla, California 92037. B▮▮ was introduced to BRANK by an individual named MILES LNU. B▮▮ had met MILES through an escort website named RENTBOY.com. MILES was involved with the homosexual pornography industry and would occasionally introduce or refer B▮▮ to other males involved in the industry for sexual interactions. B▮▮ met with MILES on four or five occasions in the past, but was no longer in contact with him.

B▮▮ had met with BRANK on multiple occasions and paid for sexual contact. In addition, B▮▮ paid BRANK approximately four times for referrals of others whom B▮▮ would pay for sexual encounters. The typical

Investigation on  03/03/2015  at  Los Angeles, California, United States (In Person)

File # ▮▮▮▮▮                                            Date drafted  03/09/2015

by  MICHAEL S WINNING , AGUIRRE JR JAIME

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

US v. Brank, 15-131 Bates 0106

arrangement was that B███ would send BRANK a list of possible individuals for contact and BRANK would arrange a meeting for a set referral fee of $2,000. B███ would then pay the individual between $1,500 and $2,000 for sexual contact. B███ could not recall the names of the individuals referred by BRANK, but believed one individual was named ILYA WARD (ph).

Sometime in January of 2015, B███ had paid BRANK a referral fee of $2000 to arrange a sexual encounter with an individual named MIRCIN LNU located somewhere in western Massachusetts. The arranged encounter never took place. During conversations with MIRCIN subsequent to the arrangement, B███ felt MIRCIN was uncomfortable with unspecified terms of the encounter and had decided to call off the arrangement. B███ and MIRCIN communicated via email. It was a point of contention with B███ that BRANK refused to return the $2000 referral fee following the breakdown of the arrangement.

B███ had previously wired BRANK $500,000 and allowed BRANK to acquire his black Audi R8 with Florida license AHFI85 from his residence in La Jolla, California. BRANK had always expressed a desire to drive the Audi R8. Agents inquired as to what leverage BRANK may have over B███ that would justify his demands. B███ explained that his reputation was his most valued asset and he was worried BRANK would damage his reputation through posts on social media. B███ did not believe BRANK was in possession of any compromising photographs or video of any kind. Text messages between BRANK and B███ provided by AXEL do make a reference to photos on February 16, 2015. B███ was also asked whether any references to "boys" in the text messages were a reference to minors. B███ stated the references were only to other homosexual males and that he had never had any sexual contact with minors.

Safeguarding his reputation was important to B███, but he acquiesced to BRANK's demands out of fear. He felt "chilled" and "afraid." B███ had known BRANK to make statements in the past to the effect of "the Romanian community is very tight and we take care of our own." BRANK had also threatened violence against a prior roommate in Washington, DC. B███ had advised against BRANK taking any violent action against the roommate. B███ feared for himself and for his housekeeper when BRANK traveled to his La Jolla residence to pick up the Audi R8. BRANK had never visited his residence and was not aware of the address, ███████ ████████████████████ until text arrangements were made for BRANK to acquire the vehicle.

B███ had no knowledge of BRANK making similar demands on any other individuals. B███ had provided monetary support to another individual named JUSTIN GRIGGS in Birmingham, Alabama. This support was given under a "helping hand" context as opposed to extortion. GRIGGS had been referred to

FD-302a (Rev. 05-08-10)



Continuation of FD-302 of  Interview of D████ B████ , On 03/03/2015 , Page 3 of 5

B████ in the past. It was possible that he was referred by BRANK, but B████ could not recall. B████ had felt inclined to help GRIGGS during hard times.

B████ was shown a copy of the text message exchanges and call logs provided by his attorney DOUGLAS AXEL. B████ reviewed the records and stated that they appeared to be complete and accurate up to the inclusive dates. There were no alterations or additions of any kind. B████ added that additional communications had occurred since the time the record was extracted. B████ was asked to provide an explanation for the text message record beginning date of February 16, 2015. Agents specifically asked if there were other communications by text, phone, or email prior to that date. B████ stated that the re-initiation of contact by BRANK came "out of the blue."

Agents inquired as to why the interactions between B████ and BRANK took place primarily over text messages as opposed to phone calls. B████ explained that it was common for individuals of BRANK's generation to communicate primarily through text messages. In addition, at the time compliance with BRANK's demands was being coordinated, B████ was in Vancouver, Washington on business. He was exploring a business venture connected with a boat yard. In this location, B████ had poor mobile phone service and no privacy to conduct phone calls. B████ pointed to text messages in the text record on February 16, 2015 that failed to send due to poor service.

B████ recalled that these transactions were occurring around the time of the President's Day holiday in February 2015. He remembered that due to President's Day, 2/16/2015, being a bank holiday, he was unable to wire the initial monetary demand of $250,000 right away. During a telephone call, BRANK increased the amount to $500,000 and demanded payment the next day. When B████ agreed to wire the money, BRANK hung up the phone.

B████ received a text message from BRANK on February 16, 2015 that instructed B████ to check BRANK's TWITTER account. B████ contacted GRIGGS from Vancouver and asked him to check BRANK's social media accounts for any posts referencing B████. He was unable to check them himself due to the poor mobile phone service in the area. GRIGGS confirmed that BRANK had posted something on his TWITTER account to the effect of "Does anyone know a guy named D██?" GRIGGS also informed B████ that a TWITTER handle of @jcshawn had responded to the post with something to the effect of, "Alright then. I'm changing my name to D██!"

Following the trip to Vancouver, B████ coordinated to have the vehicle title of his Audi R8 sent via FEDERAL EXPRESS from his office in Florida to

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of Interview of D▓▓▓ B▓▓▓ , On 03/03/2015 , Page 4 of 5

his office in Los Angeles, California. The text messages provided reflect discussion of information needed from BRANK to complete the title transfer. BRANK was reluctant to provide the necessary information.

The text messages provided also show that BRANK demanded an additional $500,000 on February 19, 2015. BRANK and B▓▓▓ had discussed the possibility of meeting this demand with payments of $50,000 per year over ten years. On approximately February 23, 2015, BURNS had offered to draft a formal contractual agreement to buy BRANK's online/pornography persona, JAREC WENTWORTH, as means to reconciliation. This was done as a stalling tactic to buy B▓▓▓' time to seek legal counsel and decide how to proceed. BRANK and B▓▓▓ had last discussed the vehicle title for the Audi R8 on February 24, 2015.

As the interview with B▓▓▓ was in progress, he began receiving text messages from BRANK. These texts included a demand by BRANK for a condominium in the Los Angeles area and $300,000. Text negotiations continued, culminating in a demand by BRANK for $1 Million cash. B▓▓▓ agreed to work on securing the funds and contact BRANK the following day. Digital screenshots of this text exchange provided by BURNS are digitally attached.

BRANK's whereabouts were unknown, but B▓▓▓ believed him to be in the Los Angeles, California area. He knew him to have family in the Sacramento, California area. B▓▓▓ knew BRANK to frequently use "party drugs" such as Molly. BRANK was in the highest paid segment of the male adult entertainment industry, but B▓▓▓ speculated that his yearly income was on the order of $30,000 to $35,000 per year. BURNS provided the following identifying information for BRANK:

| NAME | TEOFIL BRANK |
|---|---|
| ALIAS | JAREC WENTWORTH |
| DATE OF BIRTH | ▓▓▓1989 |
| COUNTRY OF BIRTH | ROMANIA |
| SOCIAL SECURITY NUMBER | ▓▓▓▓▓▓▓ |
| MOBILE TELEPHONE NUMBER | ▓▓▓▓▓▓▓ |
| WIFE'S NAME | ALINA DUBINETSKY |
| GIRLFRIEND'S NAME | CRISTINA PASCAVAGE LEBRUN |

FD-302a (Rev. 05-08-10)



Continuation of FD-302 of  Interview of D▬ B▬ , On  03/03/2015 , Page  5 of 5

US v. Brank, 15-131 Bates 0110