1  HILARY POTASHNER (Bar No. 167060)
   Acting Federal Public Defender
2  Seema Ahmad (Bar No. 270992)
   (E-Mail: Seema_Ahmad@fd.org)
3  Ashfaq G. Chowdhury (Bar No. 243763)
   (E-Mail:  Ron_Chowdhury@fd.org)
4  Deputy Federal Public Defender
   321 East 2nd Street
5  Los Angeles, California 90012-4202
   Telephone:  (213) 894-2854
6  Facsimile:  (213) 894-0081

7  Attorneys for Defendant
   TEOFIL BRANK

8

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                WESTERN DIVISION

12  UNITED STATES OF AMERICA,          Case No. CR 15-00131-JFW

13          Plaintiff,                 **DEFENDANT'S SUPPLEMENTAL
                                        BRIEFING ON THE EFFECT OF
14       v.                            THE UNITED STATES SUPREME
                                        COURT'S DECISION IN JOHNSON
15  TEOFIL BRANK,                      V. UNITED STATES ON COUNT 7
                                        OF THE FIRST SUPERSEDING
16          Defendant.                 INDICTMENT**

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.  INTRODUCTION**

3

The United States Supreme Court's decision in *Johnson v. United States*, -- U.S.

4

---, 2015 WL 2473450 (June 26, 2015) mandates that this Court grant defendant's

5

Motion to Dismiss Count 7 of the First Superseding Indictment (Docket No. 97)

6

("Motion").   Under the analysis set out in *Johnson*, Counts 2 and 5 of the FSI, which

7

contain the alleged "crime of violence" supporting the charge of 18 U.S.C. § 924(c) in

8

Count 7, are not crimes of violence for the following reasons:

9

- Count 5 of the FSI charges attempted extortion, which is not one of the

10

enumerated crimes in ACCA, and would only qualify as an ACCA

11

predicate under ACCA's residual clause, which has been struck down;

12

- *Johnson* undermines reliance on the enumerated crimes in determining

13

whether a given crime is an ACCA predicate rendering Count 2 ineligible

14

as a predicate crime of violence;

15

- Justice Scalia's view on the fatal flaws of ACCA, set out in his dissent in

16

*James*, have won the day and his definition of "extortion," which requires

17

threats of force against person or property, should be applied;

18

- The *Johnson* decision makes clear that the categorical approach should not

19

be used here, where the Court is not considering a past conviction, but

20

determining whether the jury should be instructed that Count 2 charging

21

extortion through nonviolent threats to reputation and/or Count 5 are

22

crimes of violence, for purposes of establishing the elements of Count 7.

23

Rather, the Court must look to the actual conduct that has been charged

24

here.

25

26

27

28

2

## II.  ARGUMENT

**A.   Count 5 of the FSI, on Which Count 7 Is Based, Is an Attempt Crime and Not One of the Enumerated Crimes in ACCA, 18 U.S.C. § 924(e)(2)(B)(ii)**

Count 5 charges "attempted extortion."  Even in the Supreme Court's now-overruled decision in *James v. United States*, 550 U.S. 192 (2007), attempt crimes of any of the four crimes enumerated in the Armed Career Criminal Act (ACCA), i.e., burglary, arson, extortion, or a crime involving the use of explosives (18 U.S.C. § 924(e)(2)(B)(ii)) did not qualify as ACCA predicate convictions under the enumerated crimes, but only under the residual clause.  *James*, 550 U.S. at 212 ("[T]he offense of attempted burglary, as defined by Florida law, qualifies under ACCA's residual clause.").  Given that *Johnson* held that ACCA's residual clause was void for vagueness in violation of the Due Process Clause of the Fifth Amendment to the Constitution, 2015 WL 2473450 at * 10-11, there is no longer a viable argument that because attempted extortion would be found to qualify under ACCA's residual clause, it should qualify under 18 U.S.C. § 924(c)(3)(B).

The government's entire argument in opposition to the Motion, based on Justice Alito's now overruled majority opinion in *James* is invalid.  *See*  Gov't Oppo. to Motion at 8-10.

**B.   *Johnson* Undermines the Viability of ACCA's Four Remaining Enumerated Crimes**

As this Court has noted, in the final paragraph of the *Johnson* decision, the Supreme Court makes the following statement: "We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process.  Our contrary holdings in *James* and *Sykes* are overruled.  Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."  2015 WL 2473450 at * 11.  At first blush, the holding appears to say that courts should

1    continue applying the approach set out in the Court's ACCA jurisprudence, just without

2    the residual clause.  Closer examination of *Johnson* demonstrates that the "crime of

3    violence" provision is itself a sort of residual clause.  It includes any federal felony that

4    "by its nature, involves a substantial risk that physical force against the person or

5    property of another."  The phrase "by its nature" means that the risk is measured in the

6    abstract, based on a hypothetical ordinary commission, not on the actual facts of the

7    case.  That dooms it under *Johnson*.  Even more significantly, here, the applicable

8    statute is 18 U.S.C. § 924(c)(3)(B) and the ACCA definition serves merely as an

9    analogy.

10          Throughout the *Johnson* opinion, Justice Scalia emphasizes the odd assortment

11   of crimes set out in ACCA's enumerated crimes.  In discussing how the government

12   and dissent had pointed out "dozens of federal and state criminal laws" that "use terms

13   like 'substantial risk,' 'grave risk,' and 'unreasonable risk'" would be placed in

14   "constitutional doubt" if the Supreme Court were to invalidate ACCA's residual clause,

15   Justice Scalia noted that "[a]lmost none of the cited laws links a phrase such as

16   'substantial risk' to a confusing list of examples. 'The phrase 'shades of red,' standing

17   alone, does not generate confusion or predictability; but the phrase 'fire-engine red,

18   light pink, maroon, navy blue, or colors that otherwise involve shades of red' assuredly

19   does so.  *James,* 550 U.S., at 230, n. 7 (Scalia, J. , dissenting)."  *Johnson*, 2015 WL

20   2473450 at * 8.  Justice Scalia highlights that "[c]ommon sense has not even produced

21   a consistent conception of the degree of risk posed by each of the four enumerated

22   crimes," and that "the enumerated crimes are not much more similar to one another in

23   kind than in degree of risk posed . . . ."  *Id.* at * 6.  "Does the typical extortionist

24   threaten his victim by mail with the revelation of embarrassing personal information?"

25   *Id.*

26          Given the disparate quality of the four enumerated crimes, the residual clause

27   gave guidance as to the salient common elements in the enumerated crimes.  *James*,

28   550 U.S. at 218-20 (Scalia, J., dissenting).  Without the residual clause to inform the

1   interpretation of the enumerated crimes, courts are faced with four random crimes,

2   having little in common.  *Id.*

3   **C.      Justice Scalia Defined "Extortion" to Require the Wrongful Use or**

4   **Threatened Use of Force against the Person or Property of Another**

5         In wrestling with the four disparate crimes enumerated in ACCA, Justice Scalia

6   relied on the doctrine of *noscitur a sociis*, or, "a word is known by the company it

7   keeps," *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961), to determine the

8   relevant definition of "extortion" for purposes of ACCA.  Justice Scalia considered

9   various definitions, including the Hobbs Act, Blackstone's Commentaries on the Laws

10  of England, various treatises, and the Model Penal Code.  *James*, 550 U.S. at 221-22

11  (Scalia, J., dissenting) (citations omitted).  Justice Scalia concluded that "[t]he word

12  'extortion' in ACCA's definition of 'violent felony' cannot, however, incorporate the

13  full panoply of threats that would qualify under the Model Penal Code, many of which

14  are inherently nonviolent."  *Id.* at 222.  Justice Scalia's primary reason for this

15  conclusion was, applying the doctrine of *noscitur a sociis*, that "[t]he words

16  immediately surrounding 'extortion' in § 924(e)(2)(B)(ii) are 'burglary,' 'arson,' and

17  crimes 'involv[ing] use of explosives.'  The Model Penal Code's sweeping definition of

18  extortion would sit uncomfortably indeed amidst this list of crimes which, as the

19  'otherwise' residual provision makes plain, are characterized by their potential for

20  violence and their risk of physical harm to others."  *Id.*  Justice Scalia settled on the

21  following definition for "extortion" for ACCA purposes: "the obtaining of something

22  of value from another, with his consent, induced by the wrongful use or threatened use

23  of force against the person or property of another."  *James*, 550 U.S. at 224 (Scalia, J.,

24  dissenting).  This definition controls this Court's analysis.[1]

25

26         [1] Notably, Justice Scalia, in his dissent in *James*, noted that the Ninth Circuit had

27  struggled with the definition of "extortion" for ACCA purposes in *United States v.*
*Anderson*, 989 F.2d 310, 311 (9th Cir. 1993) and had decided on the Hobbs Act

28  definition.  *James*, 550 U.S. at 223 n. 3.  Justice Scalia thus plainly considered and

1    **D.    *Johnson* Makes Clear That the Categorical Approach Should Not Apply**

2    **Here**

3    Perhaps most significantly, *Johnson* makes clear that the categorical approach

4    should not be applied here.  In the section of the opinion discussing other federal and

5    state laws that "use terms like 'substantial risk[2],'" Justice Scalia notes that these types

6    of laws "require gauging the riskiness of conduct in which an individual defendant

7    engages on a particular occasion," *Johnson*, 2015 WL 2473450 at * 8, and that "[t]he

8    residual clause, however, requires application of the 'serious potential risk' standard to

9    an idealized ordinary case of the crime."  "Because 'the elements necessary to

10   determine the imaginary ideal are uncertain both in nature and degree of effect,' this

11   abstract inquiry offers significantly less predictability than one '[t]hat deals with the

12   actual, not with the imaginary condition other than the facts.'"  *Id.* (citation omitted).

13   In other words, here, the Court must look at the Indictment to see what is charged and

14   not imagine an idealized "ordinary case of the crime."[3]

15   The difference between a court seeking to apply an ACCA enhancement and a

16   court in the instant position is clear: in the ACCA context, the sentencing court is

17   looking back, and trying to reconstruct what happened in prior cases, often in disparate

18   jurisdictions, with limited documentation.  However, in applying § 924(c), this Court

19   _____

20   rejected this approach as too broad and not in keeping with the doctrine of *noscitur a*
     *sociis* in his *James* dissent.  Justice Scalia's views in his *James* dissent have won the

21   day.  Justice Scalia's reading of the statute is now the controlling view.

22   [2] Title 18 U.S.C. § 924(c)(3)(B) uses the term "substantial risk": it defines a
     "crime of violence" as a felony that "by its nature, involves a substantial risk that
     physical force against the person or property of another may be used in the course of

23   committing the offense."  Notably, the government has specifically eschewed charges
     that Mr. Brank intended to use any force against person or property; rather, the

24   government specifies in the FSI that Mr. Brank intended to harm D.B.'s reputation by
     posting comments on Twitter.

25   [3] Indeed, the Court must determine whether the crime charged here is a crime of
     violence before deciding to instruct the jury on Count 7, the § 924(c) charge.  The

26   government's own proposed jury instruction on Count 7, which is based on Ninth
     Circuit Model Jury Instruction No. 8.72, requires that the Court instruct the jury that

27   "the crime of attempted extortion as charged in Count 5 of the indictment . . . is a crime
     of violence."  Docket No. 182 at 29.

28

looks to the facts of the case presently before it, as it has been charged, to determine how it will instruct the jury regarding an alleged underlying crime of violence.  Here, an examination of the FSI shows that neither Counts 2 or 5 charge a crime of violence: they charge nonviolent threats to reputation via social media.  The *Johnson* opinion makes clear that in this situation, the Court must look to what the instant defendant is accused of having actually done, and not imagine some "ordinary case" or idealized generic case of what he has done.  2015 WL 2473450 at * 8.  And this makes sense: the concerns underlying and justifying the categorical approach – namely, a recognition of the impossibility of requiring a sentencing court to go back into the weeds of prior convictions and parse out precisely what conduct was at issue in each case, rather than simply relying on the language of the statute of the conviction – are simply not implicated here.

### III.  CONCLUSION

For these reasons, Mr. Brank respectfully requests that this Court reconsider its prior order (Docket No. 187) denying defendant's Motion to Dismiss Count 7 of the First Superseding Indictment (Docket Nos. 97) and grant the motion.

Respectfully submitted,

HILARY POTASHNER
Acting Federal Public Defender

DATED:  June 30, 2015          By  */s/ Seema Ahmad*
                                   SEEMA AHMAD
                                   ASHFAQ G. CHOWDHURY
                                   Deputy Federal Public Defenders
                                   Attorneys for Defendant, TEOFIL BRANK

7